**Ruben Alonzo SHAFFER, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 1281S372.

Supreme Court of Indiana.

June 17, 1983.

 

Peter D. Shaw, Smith, Shaw & Wilhoite, Connersville, for appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted, after trial by jury, of Inducing Murder, Ind. Code § 35–41–2–4; § 35–42–1–1 (Burns 1979), and sentenced to sixty (60) years imprisonment. This direct appeal presents an issue which compels us to grant a new trial.

The jury commenced deliberations at 11:15 a.m. At 2:30 p.m. it requested to hear the tapes. of the testimony of witnesses, Harold Claiborne, the Defendant, Milton Patterson, and Kevin Stoner. Over an appropriate objection by Defendant, the trial court, relying on *Ortiz v. State,* (1976) 265 Ind. 549, 564–65, 356 N.E.2d 1188, 1197, allowed the jury to listen to these tapes, which contained some three and one-half hours of testimony.

Thereafter, the jurors returned to their deliberations. At 12:25 a.m., almost ten hours after the first request, the jury asked to hear the tape of witness Lonnie Johnson. Again the trial court allowed the jury to hear the tape over an appropriate objection by Defendant.

Defendant contends that the trial court abused its discretion. *See Smith v. State,* (1979) 270 Ind. 579, 388 N.E.2d 484, 485. He asserts that there were, in effect, two trials presented to the jury. In the first, the jurors were able to view the witnesses, judge their demeanor, and evaluate their credibility; in the second, they re-ceived only substance and sound. Defendant correctly notes that due process entitled the accused to a jury, which arrives at its factual conclusions after sifting and evaluating, not just the substance of testimony, but how that testimony was presented. This right is a necessary corollary of the accused's rights to confront the evidence against him and to present evidence in his own behalf.

Although we have been liberal in allowing the jury to rehear portions of the evidence adduced, neither the facts of *Ortiz v. State, supra,* nor the language of Ind.Code § 34–1–21–6 (Burns 1973)[1] authorize a virtually complete replay of the trial. Neither are we aware of any case where this has been permitted. *Douglas v. State,* (1982) Ind., 441 N.E.2d 957, 962 (allowing replay of one witness' testimony); *Long v. State,* (1981) Ind., 422 N.E.2d 284, 287 (jury reviewed exhibits including Defendant's written confession); *Harris v. State,* (1978) 269 Ind. 672, 676–77, 382 N.E.2d 913, 916 (jury saw and heard "certain" items of evidence after deliberations had commenced); *Ortiz v. State, supra* (Codefendant's written statement to the police was reread to the jury); *Hooker v. State,* (1979) Ind.App., 387 N.E.2d 1354, 1357–58 (Trans. denied) (jury reviewed Defendant's written statement to the police). More important to our conclusion, however, the record reveals that, in this case, the evidence was completely in conflict. Apart from the evidence establishing the corpus delecti of the Murder, the evidence upon the issue of Defendant's guilt consisted entirely of witnesses who contradicted one another.

The State theorized that Defendant had offered money and drugs to Lonnie Johnson to kill John Clay, whose body was found on August 6, 1980.

State's witness, Harold Claiborne, testified that on July 10, 1980 he and Johnson drove Clay to Richmond where Johnson shot Clay in the head twice. Subsequently,

---

1. "After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys."

they dumped the body. Claiborne also related that he had been present on June 30, 1980 at a drug deal in which Defendant had offered Johnson fifteen hundred dollars to kill Clay. Thereafter, on July 1, 1980 Claiborne mentioned to Defendant that they, he and Johnson, needed some drugs to win the deceased's confidence. Defendant furnished the drugs. On the next day, Defendant assertedly inquired as to why the job was taking so long to complete and subsequently reiterated this complaint. After the killing, Defendant requested proof of the event before making payment. The witness, an admitted heavy user of drugs, also claimed that he had recalled these incriminating conversations only two weeks prior to trial, which explained why previously he had repeatedly denied any involvement in the matter to the police.

Other testimony revealed that in June, 1980 Defendant had been in a scuffle with the deceased. About a week after the altercation, witness Patterson related that Defendant had offered him five hundred dollars to kill Clay. He added that ten days later Defendant stated, "don't worry about that, you know, it's been taken care of."

Defendant testified in his own behalf and denied the incriminating conversations. While he admitted having traded drugs and to having had the altercation with Clay, he denied having offered money to anyone to kill Clay. Other testimony disclosed that Claiborne and the deceased had often fought and further, Lonnie Johnson testified that he, himself, was not involved in the Murder.

On rebuttal, witness Stoner testified that Johnson had told him that he, Johnson, had killed Clay, in part at Claiborne's urging, to silence Clay about another murder, which had involved the witness, Johnson, and Claiborne.

The summary of the evidence, coupled with the jury's requests, underscores that the credibility of the witnesses was very much at issue. Moreover, the jury, at the point of the first request, obviously could not agree upon a verdict. The second request reiterated their lack of agreement,

after many hours of additional deliberations. Inasmuch as Defendant did not request a mistrial due to a hung jury, we need not consider whether this would have been a preferable alternative to having substantially replayed the entire trial.

Unquestionably, however, given the numerous contradictions, one or more witnesses, whose testimony the jury requested to rehear, had committed perjury. It was the jury's duty to decide whom, a difficult task as evidenced by the jury's express request to rehear testimony. They could hardly perform this task adequately with only soundtracks. Whatever they might have remembered of the witnesses' demeanor while testifying, matters vital to judging credibility were not preserved on the audio tape. When the jurors recommenced deliberations, they did so equipped with only the substantive testimony and lacking the facial gestures (demeanor), *Simpson v. State,* (1975) 165 Ind.App. 619, 622, 333 N.E.2d 303, 304, (per curiam), the manner in which the witnesses answered the questions, *Dawson v. State,* (1975) 163 Ind.App. 493, 496, 324 N.E.2d 839, 842 (trans. denied), the mannerisms, *Cotner v. State,* (1909) 173 Ind. 168, 170, 89 N.E. 847, 848, and the candor or lack thereof, *Black v. State* (1971) 256 Ind. 487, 490, 269 N.E.2d 870, 872, of the key witnesses. These characteristics of the fact finding process are crucial to a fair trial where the issues in dispute turn upon the credibility of the witnesses.

When the trial court acceded to the jury's request to rehear substantially the entire case, it denied Defendant his right to have the factual issues determined upon everything the jury had observed during the trial rather than upon what it had merely heard. *Cf. Fifer v. Ritter,* (1902) 159 Ind. 8, 12, 64 N.E. 463, 465 (" * * * it is no less essential to a correct result, and quite as much the jury's duty to consider facts and circumstances properly before them, which go to discredit a witness or to strengthen his testimony, as it is to consider the statements made by the witnesses.") (cases cited therein); *Accord Deal v. State,* (1895) 140 Ind. 354, 364, 39 N.E. 930, 933. We have

long acknowledged the importance of the totality of the witness' presence:

"Certainly, a witness might so conduct himself and so testify, whilst upon the stand, as to discredit his whole statements;" *Terry v. State*, (1859) 13 Ind. 70, 73.

The jury, having been limited to its auditory recollection of the trial, could not, given the extensive conflicts in the evidence, perform its duty of sifting, weighing, and judging the testimony in the manner required to have afforded Defendant a fair trial.

To interpret the statute so liberally as to permit a submission to the jury of virtually all of the testimony would be to permit a retrial stripped of subleties and other telltale characteristics that we have so often said enable the trier of fact to assess the credibility of the witnesses. So construed, the statute could not be held to meet the fair trial requirements of our State and Federal Constitutions. Accordingly, the judgment of the trial court is reversed and the case is remanded for a new trial.

DeBRULER and HUNTER, JJ., concur.

GIVAN, C.J., dissents with opinion in which PIVARNIK, J., concurs.

GIVAN, Chief Justice, dissenting.

I respectfully dissent from the majority opinion in this case. The first case cited by the majority, *Smith v. State*, (1979) 270 Ind. 579, 388 N.E.2d 484, 485, to support the contention of the appellant is of no help in the instant case. In *Smith* the trial court refused to reread the testimony of certain witnesses to the jury.

Citing the statute I.C. § 34–1–21–6, this Court held the trial judge did not abuse his discretion in refusing to reread the testimony of certain witnesses. This by no means is a statement that it is reversible error to reread testimony to the witnesses.

In *Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188, 1197, Justice DeBruler, after citing the statute, specifically stated:

"We construe this statute to provide that the judge must, on the jury's request, have read to them any properly admitted testimony or documentary evidence. This holding is compatible with the A.B. A.'s *Standards for Criminal Justice, Trial by Jury*, § 5.2(a) at p. 134 (Approved Draft 1968), the comments to which note that this is the usual practice."

I think the language of the statute is clear and that Justice DeBruler's interpretation of the statute in *Ortiz* is correct. I see nothing in either the statute or any case law placing any limitation upon the trial judge as to the amount of evidence that can be resubmitted under the statute. Although we might hold in a given case that the judge did not abuse his discretion in refusing to reread certain testimony, I see no authority for the proposition that he commits reversible error in following the statute and rereading testimony to the jury.

I would, therefore, affirm the trial court on this point.

PIVARNIK, J., concurs.