**Robert (Bobby) Lee HILL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1284S492.

Supreme Court of Indiana.

Oct. 16, 1985.

problems, including a ten year stay in a state hospital.

A few days prior to the murder Appellant purchased ammunition for his shotgun. On the day of the murder Appellant and Jeffries argued. Appellant loaded his shotgun and returned to Jeffries' house. During the night, while he stayed with Jeffries, they argued once again. Appellant went to the front porch, retrieved his gun, went back to the bedroom, and fired three shots, two of which struck Jeffries in the head. As Appellant left the house he passed Jeffries' son, who had been asleep on the couch but was awakened by "explosions." Appellant discarded the shells in a nearby yard. He later admitted to a friend that he killed Jeffries.

Appellant was examined by three psychiatrists, one of whom found Appellant capable of knowing right from wrong and appreciating the wrongfulness of his conduct. Another found him capable of standing trial, with no evidence of any disturbance, while the third recommended further examination.

Jack Quirk, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Hill was convicted of murder after a jury trial before the Delaware Circuit Court. The Honorable Steven Caldemeyer sentenced Appellant to a thirty year prison term.

Appellant's arguments raise two issues for consideration:

1. sufficiency of the evidence; and

2. whether Appellant is insane as defined by law.

Appellant was the boyfriend of the decedent, Velma Jeffries. The two were known to have arguments, during which Appellant sometimes threatened to kill Jeffries. Appellant has a third grade education, an I.Q. in the upper sixties and a history of mental

I

Appellant raises two sufficiency questions which may be considered together. He alleges his conviction was based on insufficient evidence that he *knowingly* killed Jeffries. He maintains instead that the evidence points to the conclusion that the killing was performed in a "sudden heat," therefore making the proper charge, if any, manslaughter.

Appellant maintains the "sudden heat" evidence is uncontradicted. He considers only part of the evidence however: that Jeffries' sleeping son heard explosions, that her son saw Appellant leave the bedroom carrying a shotgun; and that Appellant later admitted killing Jeffries to a friend. Appellant argues the state presented no evidence explaining the killing or proving the killing was done knowingly. He states the killing could have been accidental or justified, but does not support or develop this argument other than to explain that the killing followed an argument

and was done while Appellant was "so angry."

Appellant equates his anger with the "sudden heat" contemplated in Ind.Code § 35-42-1-3 (Burns 1985):

"a. A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a class B felony. b. The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder ... to voluntary manslaughter."

Appellant cites no authority which would place his actions within the voluntary manslaughter statute due to his anger. The only cases cited by Appellant resulted in upholding the trial court convictions. *See Hoskins v. State*, (1973) 261 Ind. 291, 302 N.E.2d 499, and *Short v. State*, (1974) 160 Ind.App. 403, 312 N.E.2d 144.

Where, as here, sufficiency of evidence is challenged on review, this Court will neither weigh the evidence nor determine the credibility of witnesses, but rather, will look to evidence most favorable to the state together with all reasonable inferences therefrom. We will then determine if there is substantial evidence of probative value from which the trier of fact might reasonably infer guilt beyond a reasonable doubt. *Harris v. State*, (1985) Ind., 480 N.E.2d 932, 937.

■ We previously have held that the element of intent (whether the killing was done knowingly) may be inferred from the use of a deadly weapon in a manner likely to cause death or bodily harm. *Davidson v. State*, (1982) Ind., 442 N.E.2d 1076, 1080. We have also found that the leveling of a cocked shotgun at a person during an argument manifests an intention to kill that person, *Brown v. State*, (1978) 270 Ind. 177, 179, 383 N.E.2d 1029, 1030; that a slaying at close range with a shotgun supports a finding of purposeful, premeditated killing, *Bruce v. State*, (1978) 268 Ind. 180, 254, 375 N.E.2d 1042, 1081, *reh. denied* (1978), *cert. denied* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662; and that prior threats and assaults are evidence of malice and

purpose and may establish premeditation, *Loyd v. State*, (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *reh. denied* (1980) *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. The evidence considered by the jury in the present case included each of these. Appellant used a deadly weapon in a manner likely to cause death when he fired his shotgun at Jeffries' head during an argument. During previous arguments Appellant had threatened to kill Jeffries. Also indicative of intent are the facts that Appellant purchased ammunition a couple of days prior to the murder and that he left Jeffries' home in order to get his shotgun on the day of the murder, loaded it, returned to Jeffries' house, and subsequently left the argument to get the gun where he'd left it on the front porch.

The issue of whether the killing was done in a "sudden heat" is for the jury to resolve. *Burris v. State*, (1983) Ind., 444 N.E.2d 1187, 1189. In the present case sufficient evidence was presented by which the jury could have determined that Appellant knowingly killed Jeffries.

## II

■ Appellant maintains that his low mentality alone should constitute insanity as defined by law. Appellant acknowledges our contrary holding in *Wilson v. State*, (1975) 263 Ind. 469, 333 N.E.2d 755, *reh. denied* (1975), but seeks a reversal of that holding and a new standard which automatically would place mentally retarded people in the category of those considered legally insane. Again Appellant cites no authority for this line of reasoning. Rather, he bases his argument on the fact that despite his chronological age of 42, Appellant has the mentality of a 9–12 year old and should therefore be treated like a child of that age. Appellant cites a societal interest in treating people who have not matured in a different manner than those who have matured past the age of 18.

The error in Appellant's proposed standard is that it treats all mentally retarded people alike, ignoring different capabilities

and levels of understanding. Appellant fails to recognize that our statute already protects those mentally retarded people in need of protection:

"(a) A person is *not* responsible for having engaged in prohibited conduct *if, as a result of mental disease or defect he was unable to appreciate the wrongfulness* of the conduct at the time of the offense.

(b) As used in this section, "mental disease or defect" means a severely abnormal mental condition that grossly and demonstrably impairs a person's perception ... (emphasis added)."

Ind.Code § 35–41–3–6 (Burns 1985). Rather than key on the state of mental retardation as the deciding factor, our Legislature has chosen to key on the degree of retardation to determine whether or not the person was aware of the wrongfulness of his act.

▮ In the present case there is no doubt that Appellant is mentally retarded to some extent. However, Appellant was examined by three psychiatrists and found capable of knowing right from wrong by at least one of them. A second found him capable of standing trial with no evidence of any disturbance, while the third recommended further evaluation. On appeal from a negative judgment as to the defense of insanity, we will consider only whether the evidence is without conflict and leads to but one conclusion. Only where such a single conclusion is supported and is opposite to the one reached by the trial court, will the decision below fall as being contrary to the law. *Gentry v. State,* (1984) Ind., 471 N.E.2d 263, 269–270. From the testimony of the psychiatrists and the evidence regarding Appellant's behavior at the time of the murder the jury could have found Appellant sane. Furthermore, Appellant has shown us no reason to abandon our statutory insanity defense in exchange for his standard concerning those mentally retarded.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and SHEPARD, JJ., concur.