John MITCHEM, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–8603–CR–210.

Supreme Court of Indiana.

Feb. 10, 1987.

William D. Hall, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant John Mitchem was convicted of murder at the conclusion of a jury trial in the Marion County Superior Court. He was sentenced to forty (40) years. The following issues are raised on direct appeal:

1. Final Instruction No. 5;
2. rebuttal testimony of Ernest Simmons;
3. proposed testimony of Steven Hooks; and
4. whether the conviction is contrary to law.

The facts supporting the jury verdict reveal that Appellant was a member of the "3–0" gang in Indianapolis, and that the victim was a member of the rival "2–4" gang. There was a history of violence between, and on the part of, both gangs. Three days prior to the murder, Appellant, armed with his father's .38 snubnose handgun, went to a variety store which served as a "hangout" for the "2–4" gang. A dispute broke out, during which Appellant fired the handgun.

Four or five days before the present incident, Joseph Stewart, Appellant's friend, took an old, rusty, .22 rifle from an 11 year old neighbor. Along with Appellant and some other friends, Stewart sawed off the barrel of the rifle in order to shorten it for concealment purposes, and test-fired it twice. On the night before the murder, Appellant told his friends he intended to carry a weapon and shoot anyone from the "2–4" gang who bothered him.

Stewart picked up Appellant for school on the morning of the murder, and brought the sawed-off rifle. At his house, Appellant asked Stewart if Stewart had brought the rifle. Stewart carried the loaded rifle under his coat as they left the house, but when they got off the bus, Appellant asked Stewart for the rifle and concealed it under his coat. During the bus ride, Appellant reiterated his threat of the previous night against the "2–4" gang. As Appellant and his friends walked to their next bus stop at the corner of Pennsylvania and Washington Streets, they saw members of the "2–4" gang, including the victim. Appellant called, "Here I am," and pulled out the rifle. The victim began taunting him, laughing, and saying, "Shoot me, punk, shoot me." At this point, there is a conflict in the evidence. Two witnesses testified that the victim reached for "a gun or something," and that "he had his hand in his jacket." However, no person present actually observed the victim draw a gun on Appellant. Appellant lowered the rifle and shot the victim through his lung and heart. Appellant and his friends fled and hid the rifle. Later, Appellant surrendered himself to the police.

I

Appellant maintains the trial court erred in giving Final Instructions No. 5 because it mandated the jury to return a guilty verdict, and did not allow them to consider whether the killing was committed in self defense. The instruction read:

"The crime of murder is defined by statute as follows: a person who knowingly or intentionally kills another human being, commits murder. To convict the Defendant the State must have proved each of the following elements: the Defendant 1. knowingly 2. killed Eli O. Lewis 3. another human being. If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty. If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of murder."

In *Loftis v. State* (1971), 256 Ind. 417, 269 N.E.2d 746, Justice DeBruler, writing for the majority, stated:

"The principle is established that a trial court may instruct the jury that if they find that all material allegations of the indictment or affidavit are proven beyond a reasonable doubt that they "should" convict the defendants. However, such an instruction would be erroneous where the court failed to set forth all the material allegations which the state must prove before conviction can be obtained or where the court failed to instruct the jury that they were the judges of the law as well as the facts."

*Loftis* also distinguished *Pritchard v. State* (1967), 248 Ind. 566, 230 N.E.2d 416, where the court instructed the jury:

"The court now instructs you that if you should find that Margaret Pritchard or Ralph Pritchard or either one of them were guilty of cruelty or neglect of Kathy Jean Pritchard and that as a result of such cruelty or neglect beyond a reasonable doubt Kathy Jean Pritchard did sicken, languish and die, then you shall find such defendant guilty of involuntary manslaughter."

248 Ind. at 568, 230 N.E.2d 416. The distinguishing feature of *Pritchard* was that the instruction given therein was a mandatory instruction which would, in fact, bind the minds and consciences of the jury to return a verdict of guilty upon finding of certain facts, hence invading the constitutional province of the jury. The instruction in the instant case, as in *Loftis,* generally referred to material allegations concerning elements of the crime rather than specific factual allegations. *See also Barker v. State* (1982), Ind., 440 N.E.2d 664. Furthermore, the jury in the instant cause was instructed that they were the sole judges of both the law and the evidence and that they were not to consider any one instruction by itself, but, rather, to consider all instructions as they relate to each other. The trial court also instructed the jury that Appellant need only raise the issue of self defense so that a reasonable doubt existed, that self defense is a proper defense and will justify a killing where death results to an assailant, and that the State must negate the issue of self defense beyond a reasonable doubt. We therefore find no error on this issue.

II

Appellant makes various claims concerning the testimony of Ernest Simmons. Simmons was listed as a witness for Appellant, but Defense Counsel decided not to call him when he realized that Simmons had lied to him regarding what he knew of the murder. Although Simmons initially had purported to have seen the incident, it was revealed later that he was not at the scene. During Appellant's case-in-chief, while under cross-examination, Appellant denied he had ever talked to Simmons about his case, and denied talking to anyone about lying for him in his defense. Consequently, the State called Simmons as a rebuttal witness, in order to show Appellant had told him about the case and had asked him to lie and say he witnessed the victim pull out a gun.

■■■ Appellant first claims this was improper rebuttal testimony because it exceeded the scope of any direct or cross-examination. This is not the case. Appellant was asked on cross-examination if he had ever talked to Simmons about the case, or asked Simmons to lie about it, and Appellant denied such. It was well within the scope of rebuttal to allow Simmons to be questioned as to whether Appellant had in fact talked to him about the case. *Norton v. State* (1980) 273 Ind. 635, 647, 408 N.E.2d 514, 529. Simmons stated that Appellant talked to him about the case, and asked him to lie about witnessing the shooting. However, Simmons went on to deny ever telling Appellant's defense counsel that he witnessed the shooting. At this point, the State sought to impeach Simmons with a statement taken on September 3, 1985. The statement appears to have been contained in a set of notes taken by the Prosecutor while he and an associate, Mr. Kinnan, interviewed Simmons at a juvenile center. This document was marked

as State's Exhibit 27, but was never introduced into evidence. Simmons was given the exhibit and asked to read it to refresh his memory. When Simmons finished, the Prosecutor asked if Simmons remembered the following:

"Q. And, Mr. Kinnan stated: 'So, you told him [defense counsel] the story John wanted you to tell him' ...

A. Yes.

Q. Do you remember that?

A. Yes.

Q. You said, 'I just told him [defense counsel] that I was down there because he [Appellant] said he needed some witnesses. I didn't want to see him get in tight so I just said I'd be his witness. And, he told me how it happened. He told me to talk to his attorney and said to say I was down there. And, he told me how it was happening. And, other people was telling me how it happened too, so the stories matched the same'; is that the answer you gave us?

A. Yes.

Q. Is that true?

A. Yes."

After the State rested, defense counsel objected to Simmons' testimony claiming the State's use of Exhibit 27 violated the trial court's discovery order. The trial court earlier had granted Appellant's general discovery motion for, "any and all other information it [the State] now has or may have come to its attention or knowledge which would be beneficial to the Defendant's defense." The State argued that Exhibit 27 was not beneficial to Appellant's defense because it was used to impeach Appellant's earlier testimony, and further, was not discoverable because it was the Prosecutor's work product. The trial court took the matter under advisement.

Defense counsel began cross-examining Simmons. When counsel asked to see "that", referring to State's Exhibit 27, the State objected, claiming the matter was still under advisement. The trial court agreed and sustained the objection. Frustrated, defense counsel rested. The trial court instructed Simmons to step down but to remain available for further questioning should defense counsel deem it necessary. At the close of all the testimony, the trial court denied Appellant's motion to strike Simmons' testimony without specifying any reasons.

Appellant's contention that the State violated the trial court's general discovery order is without merit. State's Exhibit 27 was never admitted into evidence, so we are not able to review its contents. It appears, however, that the document consisted of notes taken by the Prosecutor in an interview he had with Simmons. The exhibit was used to impeach Simmons when he denied telling Appellant's attorney he witnessed the shooting. This was proper impeachment by use of the witness' prior inconsistent statement. The Prosecutor's use of the exhibit did not violate the court's discovery order because it was in no way beneficial to Appellant's defense. Rather, the use of Exhibit 27 damaged Appellant in that it indicated he lied in his earlier testimony. The court apparently determined the State was under no duty to turn over what was contained in the exhibit because it was not covered by the court's discovery order.

■ Appellant's final contention is that he was denied an opportunity to cross-examine Simmons because defense counsel was not permitted to see the contents of State's Exhibit 27. Appellant's contention is well taken. Once State's Exhibit 27 was marked for identification and handed to Simmons to refresh his memory, and Simmons then testified from his refreshed memory, defense counsel was entitled to see the contents of the exhibit, and to use the exhibit in his cross-examination. Upon reviewing the record, however, we find any error here was harmless.

Defense counsel was aware that Simmons lied about being at the scene of the crime. This was the reason defense counsel decided not to call Simmons as a defense witness. Although the State's use of Simmons as a rebuttal witness was damaging to Appellant, it was Appellant who

opened the door to this testimony. There is no indication defense counsel was surprised by Simmons' revelations. Defense counsel knew Simmons' testimony would be damaging, and while he tried to keep it out, he was unable to do so. There is no indication that Simmons' damaging testimony could have been lessened to any extent had defense counsel been allowed to cross-examine Simmons using Exhibit 27. Since Appellant has failed to show us any prejudice flowing from these circumstances, any error here is harmless.

### III

■ Appellant contends the trial court erred in handling the proposed testimony of Steven Hooks. As Hooks was about to testify for Appellant, Defense Counsel alleges an attorney who had no connection with this case appeared in court and sought a bench conference, at which he purported to represent Hooks, and stated he would advise Hooks to plead the Fifth Amendment at each question. Defense Counsel further alleges the trial court informed him it would sustain any Fifth Amendment objections, and such would not look good for Appellant before the jury. Hooks was not called to testify.

Since Hooks was not called to testify, no record was made of the questions which would have been posed to him. Therefore, we are in no position to determine whether the questions would have elicited incriminating answers justifying a Fifth Amendment invocation. Appellant has waived any error. *Weekly v. State* (1986), Ind., 496 N.E.2d 29, 31. The proper remedy for Appellant would have been to call Hooks as a witness, and if objections to his testimony were lodged and sustained, an offer to prove could have been made by Appellant. It is uncontroverted that Hooks was never called to testify. It is well established that without the witness being called and questioned, and without an objection to his testimony being sustained, no offer to prove could have been made. *Sauntman v. Maxwell* (1899), 154 Ind. 114, 125, 54 N.E. 397, 401, *reh. denied* (1900); *Indianapolis &*

*Martinsville Rapid Transit Company v. Hall* (1905), 165 Ind. 557, 560, 76 N.E. 242, 243; *See Also State v. Lonergan* (1969), 252 Ind. 376, 378, 248 N.E.2d 352, 353.

■ Appellant claims he did make an offer to prove during the bench conference in question here. It later was discovered that no record was made of what transpired during this conference because the court reporter had turned off the tape recorder. Defense counsel sought to supplement the record by filing a Verified Motion Pursuant to Appellate Rule 7.2(A)(3)(c) Statement to Correct Record for Appeal.

Ind.R.App.P. 7.2(A)(3)(c) states:

"If no report of all or part of the evidence or proceedings at the hearing or trial was or is being made, or if a transcript is unavailable, a party may prepare a statement of the evidence of proceedings from the best available means, including his recollection. If submitted contemporaneously with the matter complained of the statement may be settled and approved by the trial court. If submitted thereafter, the statement shall be served on other parties who may serve objections or prepare amendments thereto within ten (10) days after service. The statement and any objections or prepared amendments shall be submitted for the trial court for settlement and approval and as settled and approved shall become a part of the record and be included by the clerk of the trial court in the record."

Appellant filed his motion to supplement the record after his motion to correct errors had been denied, and this appeal had commenced. Appellant's motion was filed with the clerk of the trial court, but the motion was never brought to the attention of the trial court judge. No hearing on the motion was requested. The trial court judge never approved Appellant's rendition of what transpired during the bench conference. Rather, Appellant sought to have his version of facts added to the record by filing a supplemental praecipe requesting the trial court clerk to add his verified motion to the record.

It is implicit in situations such as this, that the party filing a motion to supplement the record under Ind.R.App.P. 7.2(A)(3)(c) bring the matter to the trial judge's attention. The rule requires the judge's approval of the proposed supplement to the record. Since the rule requires the affirmative act of the trial court judge, the party making such a motion has a duty to see that the matter is set for a hearing, and that the trial judge gives his approval to the proposed supplement to the record. Here, Appellant merely filed his motion with the clerk of the trial court, and then filed a supplemental praecipe asking that his verified motion be added to the record. This was improper. Because Appellant has failed to comply with the rule, we are unable to review the merits of his argument. All we have before us is a rendition of what he alleges took place at the bench conference in question. It would be improper for us to attempt to decide this issue based on what Appellant claims was said during the bench conference. Appellant's verified motion explaining his version of the discussion held at that conference is not a proper part of the record, and we will not consider it. Appellant has waived any effort here.

### IV

 Finally, Appellant alleges the verdict is contrary to law in that the killing was carried out in self defense. When a self-defense claim is raised, the State has the burden of proving beyond a reasonable doubt that the defendant did not meet at least one of the elements necessary to prove that justification. *Spinks v. State* (1982), Ind., 437 N.E.2d 963, 964. The final determination of whether the State has met its burden to negate the claim of self defense rests with the trier of fact. *Id.* at 965. A conviction on a claim of self defense, as in all fact determinations, will not be disturbed when there is probative evidence from which the trier of fact could reasonably infer guilt beyond a reasonable doubt.

 Here, the evidence showed that Appellant and the victim were members of rival gangs between which there was a history of trouble. Both Appellant and the victim previously had been involved in shoot-outs. Prior to the murder, and on the morning of the murder, Appellant threatened to shoot any member of the rival gang who caused him trouble. On the morning of the murder, Appellant arrived at the scene armed with a rifle which had been sawed off for concealment. Although there is some testimony that the victim might have had a gun, none was ever found, and every witness testified Appellant's gun was drawn at the start of the confrontation. The jury had reasonable grounds to find that the above-recited evidence did not sufficiently justify Appellant's claim of self-defense. The State sufficiently met its burden in that regard.

The trial court is affirmed.

GIVAN, C.J., and DeBRULER and SHEPARD, JJ., concur.

DICKSON, J., dissents without opinion.