Tracy MADISON, Appellant,

v.

STATE of Indiana, Appellee.

No. 26S00–8711–CR–1055.

Supreme Court of Indiana.

Feb. 28, 1989.

William J. Marshall, Oakland City, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Murder, for which he received a sentence of thirty (30) years.

The facts are: On March 16, 1986, Chris Chavis, appellant, and appellant's brother Tony went to the home of Irene Maier, appellant's girl friend, in Princeton, Indiana. Appellant's relationship with his brother had periods of volatility. When they arrived, appellant was upset with Tony, and both men were drunk.

Amber Velasquez, Shelley Jackson, and Stacey Maier were at Irene's house. While some of the group played cards, Tony went into the bedroom with Stacey.

After a short while, Stacey returned to the group and was upset because Tony hit her in the face. Irene told Tony to stop hitting Stacey, and he left. At that time, appellant took his knife from his pocket, opened it and laid it on the table, and told Irene that if she didn't stop Tony from hitting Stacey, he would. They continued the card game while they discussed Tony's problems.

Soon thereafter they heard a knock at the back door. Tony entered and swore at everyone for talking about him. He was very hostile and challenged everyone in the room to a fight. He continued his remarks, then addressed them specifically to appellant but appellant said he did not want to fight.

Tony continued his tirade and began poking and shoving appellant. Appellant and Irene testified that Tony had a small knife at this time. The others testified that they did not see Tony with a knife.

Appellant grabbed his knife from the table, and a fight ensued. Appellant testified that when he saw Tony come at him he decided to stab him first before he got stabbed. He stabbed Tony in the chest and punctured his heart which was the cause of his death.

Appellant first told police he did not know who stabbed Tony. Then he told them Chris stabbed him. Later he said he accidentally cut Tony. He stated on cross-examination that in previous fights Tony had beaten him, and he had the knife to equalize the situation.

Appellant argues the evidence is insufficient to sustain the verdict of the jury, and the trial court erred in denying his motion for judgment on the evidence.

In reviewing the sufficiency of the evidence, this Court will not reweigh the evidence or judge the credibility of the witnesses. *White v. State* (1986), Ind., 495 N.E.2d 725.

Appellant contends the State failed to rebut his claim of self-defense.

To establish a claim of self-defense, the defendant must show that he was in a place he had a right to be, that he acted without fault, and that he had a reasonable fear or apprehension of death or great bodily harm. *Lilly v. State* (1987),

Ind., 506 N.E.2d 23. The burden is upon the State to negate one of the elements of self-defense. The State may carry its burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of the evidence in chief. *Id.*

■ Whether the State had disproved a claim of self-defense is a question of fact for the jury. *Hill v. State* (1986), Ind., 497 N.E.2d 1061. When the evidence is conflicting, the jury may reasonably accept or reject the claim of self-defense. A defendant's conviction in spite of a claim of self-defense can be reversed on appeal only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Lilly, supra.*

■ Evidence existed which showed that appellant had an ongoing grievance with Tony and that he readied his knife in preparation for a fight because he was tired of Tony winning their fist fights. Police found a knife on the freezer in Maier's home which was later identified as Tony's. However, witnesses other than appellant and his girl friend testified that they saw no weapon on Tony. It was the prerogative of the jury to believe he was not armed and that appellant had no reasonable fear of death or great bodily harm.

■ Appellant stabbed Tony with sufficient force to thrust the knife into his chest down to the handle, then he gave police three exculpatory versions of the incident. The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Hill v. State* (1985), Ind., 483 N.E.2d 746. From the evidence, the jury could find that the State negated the self-defense claim beyond a reasonable doubt.

Appellant also argues the evidence does not support his murder conviction because Tony's threats provoked him and he acted in sudden heat; thus, his conviction should amount to only manslaughter at most.

■ For the offense to be reduced to manslaughter, it must be found that there was sufficient provocation to arouse the emotions of the ordinary man so as to obscure his reasoning powers. *Bryan v. State* (1983), Ind., 450 N.E.2d 53. The determination of whether the accused acted upon heat of passion is one for the jury. *Johnson v. State* (1986), Ind., 501 N.E.2d 442.

Though one may conclude that appellant became angry when Tony swore and threatened to fight him, the jury was entitled to find that the provocation was inadequate to obscure the ordinary man's reasoning or his understanding of the consequences of his actions. Such a finding is supported by the fact that appellant opened his knife in preparation for a fight, and he stated his intention to equalize the situation by using the knife. Accordingly, we find the evidence is sufficient to support appellant's conviction.

■ Appellant argues the trial court erroneously refused the admission of the results of a polygraph examination taken by Irene Maier.

At a pretrial conference, the State's oral motion in limine prohibiting questioning about polygraph examinations was sustained. At trial, appellant made an offer to prove the qualifications of the polygraph examiner and the reliability of the test results. His request to present the polygraph evidence to the jury was denied. Appellant argues that because the polygraph examiner was highly qualified and he believed his examinations were very reliable, precedent disallowing the admission of such evidence should not be followed in his case.

Because the value of polygraph examinations is highly questionable and the jury may attach undue weight to their results, we refrain to diverge from our position that they are inadmissible. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068. The trial court is without discretion to admit or to exclude polygraph evidence until a proper waiver or stipulation has been made. *Evans v. State* (1986), Ind., 489 N.E.2d 942. We find no error.

■ Appellant contends the jury was erroneously instructed on the elements of murder. Final Instruction No. 9 reads:

"The crime of murder is defined by statute as follows:

A person who knowingly or intentionally kills another human being, commits murder, a felony.

To convict the defendant the State must have proved each of the following elements:

The defendant:

1. Knowingly or intentionally;
2. killed
3. another human being, ANTHONY W. MADISON.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of murder, a felony."

Appellant claims this instruction is faulty because it tells the jury that if they found beyond a reasonable doubt that the defendant intentionally killed another human being they should find him guilty of murder. He contends it is a mandatory instruction which nullifies his self-defense claim.

Appellant compares his case with *Mundy v. State* (1966), 247 Ind. 224, 214 N.E.2d 389 in which this Court reversed appellant's conviction because a defective instruction ignored his self-defense claim. The last sentence of the instruction stated that despite a finding of sudden heat, the killing was still unlawful because a man is bound to curb his passions and the offense is accordingly manslaughter.

It cannot be said that the use of the word "should" in Instruction No. 9 has the effect of precluding a self-defense claim as did the instruction in *Mundy*. We have held that the use of the word "should" in such a case is not improper as long as the jury is instructed upon the material allegations which the State must prove and that they are the judges of the law as well as the facts. *Mitchem v. State* (1987), Ind., 503 N.E.2d 889. Because the jury was so instructed in appellant's case, we find no error.

■ Appellant claims the trial court erroneously allowed the jury to rehear the testimony of Chris Chavis. The jury requested during deliberations a copy of Chavis's testimony. Appellant objected to the jury's request. His objection was overruled, and a tape of his testimony was replayed to the jury. Appellant asserts the trial court denied him his right to confront a witness and that undue emphasis was placed on Chavis's testimony.

Indiana Code § 34-1-21-6 states that after the jury has begun deliberations, if there is a disagreement among them about part of the testimony, upon notice to the parties the information required shall be given to them.

Appellant believes his case is analogous to *Shaffer v. State* (1983), Ind., 449 N.E.2d 1074 (Givan, C.J. and Pivarnik, J. dissenting) in which this Court held that reversible error occurred when the trial court replayed the entire trial, which consisted of substantially conflicting testimony.

In appellant's case, the testimony replayed consisted of approximately thirty pages of the transcript and cannot be compared in volume to that replayed in *Shaffer*. Also, the significance of the conflicting testimony in appellant's case was not as great as that in *Shaffer*. We find no abuse of trial court discretion in replaying Chavis's testimony upon the jury's request. *Brackens v. State* (1985), Ind., 480 N.E.2d 536; *Douglas v. State* (1982), Ind., 441 N.E.2d 957.

■ Appellant argues the trial court erred when it referred to the death penalty during *voir dire*. The prospective jurors were advised that in this murder case, they would not be requested to consider the death penalty. Appellant's objection to the comment and motion to discharge the jury were denied. Appellant argues the trial court's comment disparaged the seriousness of his case.

This issue was resolved in *Burgess v. State* (1983), Ind., 444 N.E.2d 1193 in which

we held that the possibility of a death sentence can be a secretly-held concern of prospective jurors in a murder case and as such, may improperly influence the manner in which they answer questions on *voir dire*. Though the penalty is irrelevant to jurors in their guilt-assessing duty, the trial was not rendered unfair by the trial court's comment. *Id.* We find no reversible error.

■ Appellant further argues that the trial court improperly denied his request to inform the jury that he could receive sixty (60) years imprisonment as a possible sentence. He believes that because the judge's comment discussed in the issue above discounted the seriousness of his case, the jury should have known the possible penalty he faced.

We first note that appellant has failed to cite authority in his brief to support his position. Therefore, the issue has been waived. Ind.R.App.P. 8.3(A)(7); *Reichard v. State* (1987), Ind., 510 N.E.2d 163.

Further, the jury has no sentencing function and should not be informed about the possible sentences. *Wisehart v. State* (1985), Ind., 484 N.E.2d 949. We find no error.

■ Appellant contends his statements given to police should not have been admitted because they were procured by police coercion and intimidation.

During the testimony of Sergeant Hedges, appellant's statements were admitted into evidence without objection. Later during appellant's offer to prove, Detective Munnier stated that after appellant received his rights, he asked the officers whether he would go to prison. Sergeant Hedges told appellant he could get a life sentence, and there was evidence that Hedges mentioned the death penalty as a possibility. Detective Munnier was unsure of the accuracy of Sergeant Hedges' statement, so he told appellant they could not tell him what would happen to him until they obtained the truth from him. Appellant believes these remarks amounted to threats and coercion which induced his statements.

No objection was made when these statements were offered into evidence, so this issue has been waived. *Abner v. State* (1985), Ind., 479 N.E.2d 1254.

Also, admissibility of a statement or confession is controlled by determining from the totality of the circumstances whether the statement was given voluntarily and not through inducement, violence, threats, or other improper influences which would overcome the free will of the accused. On appeal, this Court will review the question as we do other sufficiency matters and we will not reweigh the evidence. *Drew v. State* (1987), Ind., 503 N.E.2d 613.

The record reveals that appellant signed a waiver of rights form, and he remarked in his statement that the waiver of his rights was done on his own free will. There is no evidence that appellant was subjected to a lengthy or threatening interrogation.

The officer's comment on the possible sentences cannot be construed as coercive. Appellant requested the information, and the officer responded to the best of his knowledge. We have previously held that an explanation of possible penalties does not qualify as an inducement which renders a confession involuntary. *Id.* We find no merit to appellant's claim that his statements were induced.

■ Appellant asserts fundamental error occurred which denied him a fair trial when the investigating police officers neglected to test a knife for fingerprints.

Police found a pocket knife on the freezer which was later identified as belonging to Tony. The knife was placed in an evidence bag and admitted at trial. Police did not attempt to obtain fingerprints from the knife, and appellant believes in so doing they negligently destroyed possibly exculpatory evidence.

We first note that appellant made no objection or motion concerning the lack of fingerprints before or during the trial. Therefore, no issue was preserved for purposes of appeal. *Abner, supra.*

In the case of *Arizona v. Youngblood*, — U.S. —, —, 109 S.Ct. 333, 342, 102

L.Ed.2d 281, 289 (1988), the Supreme Court stated:

"But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."

The Court went on to say:

"We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."

Evidence of Tony's fingerprints on the knife would not have been exculpatory to appellant because it was established at trial that the knife belonged to Tony. Evidence of Tony's fingerprints on the knife would not have proven that Tony was holding it when appellant stabbed him. Because the omitted evidence had no exculpatory impact on the case, we find no error.

Appellant argues that upon consideration of the totality of the above-mentioned errors of law, he was denied a fair trial.

■■■ When none of the claimed errors constitutes reversible error, the cumulative effect of such alleged errors does not constitute reversible error. *Lucas v. State* (1986), Ind., 499 N.E.2d 1090.

THE TRIAL COURT IS AFFIRMED.

SHEPARD, C.J., and PIVARNIK, J., concur.

DeBRULER, J., concurs with separate opinion in which DICKSON, J., concurs but dissents on other grounds with separate opinion.

DICKSON, J., dissents with separate opinion.

DeBRULER, Justice, concurring,

In resolving appellant's claim that the prosecution destroyed evidence, the majority seems to take the position that the defendant would bear a burden to demonstrate prejudice in a case in which he is successful in showing a negligent destruction by the police of exculpatory evidence.

If that is the position taken in the majority opinion, it is unsupported by authority in this State. The question of how the burdens should be parcelled out in a negligent or intentional destruction of evidence case was considered by this Court in *Johnson v. State* (1987), Ind., 507 N.E.2d 980, and left unresolved because the Court was evenly divided.

In my view, yet to be rejected by this Court, once the defendant shows that the government has destroyed evidence of an exculpatory nature, the burden should be upon the government to establish the absence of prejudice. The risk should be upon the prosecution in such situations. The police and prosecutors are trained for, and highly skilled in, the gathering and retention of the products of their criminal investigations. The best knowledge of the exact nature of the items is with the government; and it is upon the government that the risk should fall in these circumstances.

This is an important legal question which is currently being considered by many other courts. It is important because it bears in substantial fashion upon the fairness of criminal proceedings. The case of *Reed v. State* (1985), Ind., 479 N.E.2d 1248, like the case before us today, places the burden upon the accused to show that evidence was withheld or destroyed by the police, but does not present or resolve the further question of where any additional burdens should be assigned.

The majority quotes with approval the statement in *Arizona v. Youngblood* (1988), —— U.S. ——, ——, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289, that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." I find myself in accord with the reasoning in the concurring opinion of Justice Stevens, wherein he finds the casting of the burden upon the defendant to show bad faith to be inconsistent with the promise of a fundamentally fair trial. There is a legal duty

imposed upon the prosecuting forces by Indiana law to preserve potentially useful evidence, and a simple breach of that duty by reason of the failure to use due care should be enough to support a claim of basic unfairness.

In this case, appellant has failed to show that fingerprints upon the knife would have been potentially useful evidence to the defense. I therefore do not dissent from the decision.

DICKSON, J., concurs but dissents on other grounds with separate opinion.

DICKSON, Justice, dissenting.

A mandatory jury instruction is one which purports to set out all of the elements essential to an issue and then directs the jury to find for a particular party. *Perry v. Goss* (1970), 253 Ind. 603, 255 N.E.2d 923; *Cato Enterprises, Inc. v. Fine* (1971), 149 Ind.App. 163, 271 N.E.2d 146. An ambiguity, inaccuracy, or incompleteness of a mandatory instruction may *not* be cured by reference to other instructions. *Shelby Nat'l Bank v. Miller* (1971), 147 Ind.App. 203, 259 N.E.2d 450; *Coffey v. Wininger* (1973), 156 Ind.App. 233, 296 N.E.2d 154; *Estate of Hunt v. Board of Comm'rs of Henry County* (1988), Ind. App., 526 N.E.2d 1230.

In the present case, final instruction No. 9 purported to set out all of the essential elements and then directed the jury to find guilt upon satisfactory proof of these elements. It is therefore a mandatory instruction. Because it fails to include the necessary elements of defendant's self-defense claim, it was erroneously given. To the extent that this conclusion is inconsistent with *Mitchem v. State* (1987), Ind., 503 N.E.2d 889, the latter should be clarified, limited, or overruled.