**Dwayne Edward SMITH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 10A01–8903–CR–00085.**

Court of Appeals of Indiana, First District.

Feb. 15, 1990.

J. Charles Guilfoyle, Kenneth R. Abbott, Clary, Hess, Guilfoyle, Thomas, Abbot & Mosley, Jeffersonville, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Dwayne E. Smith appeals his convictions of voluntary manslaughter, robbery resulting in serious bodily injury and obstruction of justice. We affirm in part and remand in part.

Briefly summarized, the record discloses these facts favorable to the jury's verdict. Smith, then nineteen years old, met fifteen-year-old Loretta Stump in late September or early October, 1987. Stump had left a home for juveniles where she had been staying after having accused her parents of physical and sexual abuse. She recanted the allegations made against her parents and asked to come home. Her parents picked her up and agreed to take in Smith temporarily until he was able to find a job. Within a short period of time, it became apparent that the arrangement would not work out and the Stumps asked Smith to leave. He talked Loretta Stump into running away with him to Texas and the two left, traveling by bus to Clarksville, Indiana. The Clarksville police picked them up loitering after hours at the Greentree Mall but, unable to identify Stump or Smith as missing persons or runaways, dropped them off in Jeffersonville in a neighborhood along the river where Smith had lived with his grandfather.

Appellant Smith and Stump spent the night on the first floor of an abandoned house on the river. The next day, November 3, 1987, they met the victim Teddy Brock. Brock and his girlfriend had been sleeping in the third floor attic and kept their food and belongings there. Brock agreed to share the house with Smith and Stump provided appellant and his girlfriend confined themselves to one of the lower floors. That evening Brock introduced Smith and Stump to his girlfriend. Brock's girlfriend did not like sharing their space and was annoyed with Brock when he agreed to cook steaks with Smith and Stump. Brock and his girlfriend shared a beer, then he left for the liquor store to obtain wine. Brock's girlfriend waited for him but when he did not return she left for the evening.

Brock became extremely intoxicated during the cookout. Smith hauled him up to the attic where he passed out. Later that evening or early morning, Smith sent Stump up to the attic to obtain some money from Brock. Brock was too intoxicated to respond. Shortly thereafter, both Smith and Stump went to the attic. Smith jumped on Brock, who was sleeping on his stomach, struck the victim in his sides with his fists and tied the victim's arms behind his back. Stump watched as Smith slammed the victim's head into the wall and choked Brock, twisting Brock's head at the neck until the victim stopped moving. Smith removed Brock's wallet, hid the body in a small space behind an arch and covered the body with insulation. Smith and Stump left the house and did not return. Smith threatened Stump that if she told anyone he would do the same to her.

The couple eventually made their way to Texas. Just before Thanksgiving, Stump eluded Smith and telephoned her mom, expressing the desire to come home. A friend provided her with bus fare and she returned to Indiana. Stump reported the incident to her parents but they did not believe her. In early January, after Stump began experiencing nightmares and diffi-

culty sleeping, Stump's father became concerned that the story might in fact be true and decided to look for a body. He discovered the victim in the attic as Stump had described.

An autopsy revealed that the victim suffered a blow to the larynx from a blunt force, consistent with strangulation. The victim died of asphyxia, the consequence of a fractured upper cartilage of the larynx which collapsed and blocked the airway.

Smith testified in his own defense. He admitted being in the house with Stump but claimed that Brock, angered by Stump and intoxicated, came at him and initiated the altercation. Smith testified that he knocked Brock out but checked his breathing and left him alive. Smith disavowed any knowledge of the manner in which Brock was ultimately found, claiming that he left without removing his possessions and spent the remainder of the night on a boat where he awakened to find Stump and his belongings beside him.

## I.

■■ Smith concedes that the evidence is sufficient to establish that the victim met an untimely death. He contends however that the testimony of Loretta Stump is so "inherently incredible" and that she is so "disreputable" that her credibility has been rendered a question of law for the court. Smith points to a number of circumstances affecting the witness's credibility generally: the fact that Stump recanted the charges of physical and sexual abuse made against her parents, posed as Smith's sister when the Clarksville police caught her loitering with Smith, gave conflicting testimony on the time of the murder, contradicted the victim's girlfriend in describing the events preceding the cookout, failed to disclose in her first statement to the police that she had witnessed the murder, and gave varying descriptions of the contents of the victim's wallet. Smith also argues that the circumstantial evidence and physical facts rendered her story implausible, and given the possibility that she was in fact an accomplice, his conviction based upon her testimony cannot stand.

Smith testified in detail about the events transpiring before his purported altercation with the victim, verifying much of Loretta Stump's account and admitting that he was in the house with Stump the day before the victim died. An inference can therefore fairly and reasonably be drawn from all the evidence including that offered by Smith that, despite contradictions and inconsistencies in her statements and testimony, Stump was present to observe the circumstances transpiring the evening before the victim died. Given this fact, the jury must necessarily reconcile the two competing versions offered by Smith and Stump with the physical and circumstantial evidence of guilt.

Unlike those cases where Indiana courts have found the testimony of a single witness insufficient to sustain a conviction, cf., Gaddis v. State (1969), 253 Ind. 73, 251 N.E.2d 658 and Sylvester v. State (1933), 205 Ind. 628, 187 N.E. 669, this record contains physical and circumstantial evidence corroborating the eyewitness testimony. Stump testified that she observed Smith tie the victim's hands behind his back as he lay face down. According to Stump, Smith then proceeded to beat on the victim while sitting on top of him, shoving the victim's head into the wall, choking him, and twisting the victim's head. Stump reported hearing the victim gasping for air before he died. The pathologist who conducted the autopsy on Teddy Brock noted that the body was presented to him with the hands crossed and tied behind the back. Rapid and more extensive decomposition of the head and neck as compared with the remainder of the body was indicative of injury to that area. No facial tissue remained. An examination of the head and neck disclosed that death was caused by asphyxia secondary to a vertical fracture to the left side of the thyroid cartilage of the larynx consistent with pressure of the larynx against the spinal column from a grip of the neck in a stranglehold.

Although there are other circumstances tending to corroborate Stump's testimony, we feel it unnecessary to detail those here. If Loretta Stump's account of the killing of

Teddy Brock were so riddled with falsehood and supposition as to be unworthy of belief, the physical evidence of the cause and manner of death would not substantiate her testimony to the degree it does. Stump's testimony is not inherently implausible. The determination of whether to believe Stump at all was therefore properly one for the jury as the record contains substantial evidence of probative value from which to infer guilt beyond a reasonable doubt. *Cf. Watkins v. State* (1983), Ind., 446 N.E.2d 949 (excited utterance providing degree of reliability).

## II.

■ Smith argues that his conviction of robbery resulting in serious bodily injury cannot stand because it is factually and legally inconsistent with a conviction of voluntary manslaughter. According to Smith, a conviction of voluntary manslaughter necessarily means the jury found he killed Brock while acting in sudden heat while a conviction of robbery necessitates a finding that he acted with the conscious objective of obtaining the property of another from the person by the use or threat of force.

The State charged Smith with murder pursuant to IND.CODE 35–42–1–1(1). He was not charged with what is commonly referred to as felony-murder. The elements of murder and voluntary manslaughter are identical; each is defined as the knowing or intentional killing of another human being. *Palmer v. State* (1981), Ind., 425 N.E.2d 640, 644. Sudden heat is not an element of voluntary manslaughter, but rather a mitigating factor in conduct that would otherwise be murder. *Id.; Estes v. State* (1983), Ind., 451 N.E.2d 313, 314. The necessary intentional element of the crime of voluntary manslaughter can be proved by evidence that the accused had a conscious objective to kill another or was aware of a high probability that his conduct would result in the death of another individual. *Anderson v. State* (1984), Ind., 466 N.E.2d 27, 30.

■ The definition of robbery contained in I.C. 35–42–5–1 requires proof of the same level of culpability as does voluntary manslaughter. The crimes are therefore not legally or factually inconsistent.

## III.

Next, Smith attacks his conviction of robbery resulting in serious bodily injury by arguing that the homicide statutes control when a defendant's conduct results in death. His contention is simply that the definition of serious bodily injury does not and was not intended to include death. Inasmuch as a resolution of this issue in Smith's favor would require that his conviction of robbery as a class A felony be vacated and entered as a class C felony, and we agree with Smith's contention addressed in issue IV. *infra,* that the convictions of both voluntary manslaughter and robbery resulting in serious bodily injury cannot stand, we will refrain from addressing the question presented by Smith as issue III at this time.

## IV.

■ Smith argues that the trial court erred in failing to merge his convictions of voluntary manslaughter and robbery resulting in serious bodily injury. He maintains that the double jeopardy clause of the U.S. Constitution precludes multiple punishments for the same killing.

The State alleged by information that Smith did "knowingly or intentionally kill ... TEDDY A. BROCK" by committing "repeated acts of violence to the person of TEDDY A. BROCK causing severe lacerations to the face and head and asphyxiation by strangulation from which the said TEDDY A. BROCK did then and there die." In its robbery charge, the State alleged that Smith "did knowingly or intentionally take property ... from the person of TEDDY A. BROCK by using or threatening the use of force on TEDDY A. BROCK that resulted in serious bodily injury ..." The State's proof showed that Smith beat upon Brock about the head and neck, choked him and twisted his head until Brock died. The conclusion is therefore unavoidable that the murder charge and the robbery charge to the extent it includes the added element of

resultant serious bodily injury are based upon and seek punishment for the same injurious consequences. Although the law permits the State to charge both crimes and to try them in a single trial even though based upon the same death, the bar against multiple punishments for the same offense prevents separate convictions and sentences upon both. *Bevill v. State* (1985), Ind., 472 N.E.2d 1247. *Cf. also, Winfrey v. State,* (1989) Ind., 547 N.E.2d 272. Therefore, Smith's conviction of both voluntary manslaughter and class A felony robbery cannot stand.

■ We observe however that Smith can be properly convicted of both voluntary manslaughter and robbery. Smith was charged with murder pursuant to I.C. 35–42–1–1(1). Hence, the robbery conviction was not an underlying element of proof necessary for the murder conviction, and the State became bound to prove an intent to kill. As charged, then, each crime required proof of at least one element which the other did not. Conviction of both voluntary manslaughter and robbery was therefore proper. *Cf., Anderson v. State* (1983), Ind., 448 N.E.2d 1180 (conviction of both attempted murder and robbery upheld); *Head v. State* (1982), Ind., 443 N.E:2d 44.

### V.

Smith also alleges the trial court erred both in replaying a portion of the trial testimony and in reading transcripts of Loretta Stump's statements after the jury had deliberated nearly twelve hours. The court replayed in part Stump's in-court testimony and Smith's in-court testimony; it read portions of Stump's January 3 and 6 statements.

I.C. 34–1–21–6 provides that after the jury has retired for deliberation, if there is any disagreement between them as to any part of the testimony, they may request to return to court where the information shall be given to them in the presence of all the parties. This statute has been construed to mean that the judge must, on the jury's request, read to them any properly admitted testimony or documentary evidence.

*Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188, 1197. However, the trial court's authority to replay parts of the trial testimony after the jurors have commenced deliberations is not unlimited. In *Shaffer v. State* (1983), Ind., 449 N.E.2d 1074, the Indiana Supreme Court held that I.C. 34–1–21–6 could not be construed, consistent with the fair trial requirements of the state and federal constitutions, to permit a replay of virtually all of the testimony, for the jury could not properly perform its factfinding function in situations where the evidence is extremely conflicting if limited by their auditory recollections of the trial.

■ Smith's reliance upon *Shaffer* at this stage of the proceedings is disingenuous. At trial, he urged the court to replay the entire tape of the trial, arguing that a partial replay of the testimony would be prejudicial to his case. A party may not object on one basis at trial and then adopt a different basis on appeal. If he does so, error, if any, in regard to it is waived. *Golden v. State* (1985), Ind., 485 N.E.2d 51, 57.

■ In any event, the concern of a virtual retrial without the advantage of viewing the witnesses while testifying, identified in *Shaffer,* is not a problem here. By our count, the jury heard testimony from twenty-one different witnesses at trial; it asked to listen to the evidence from two, requesting specifically the testimony of Stump and Smith concerning the details of the events leading up to and including the altercation in the attic. The court restricted the reading and replay to those portions of the record particularly requested by the jury. Much of the evidence which was not reviewed tended either to buttress Stump's testimony or point circumstantially to Smith's guilt.

Admittedly, Loretta Stump's testimony was the only direct evidence of guilt and her credibility was at issue. But the same can be said of any case in which the conviction turns primarily upon the testimony of a single witness. *Compare Brackens v. State* (1985), Ind., 480 N.E.2d 536 (child molesting victim's testimony replayed).

The jury's review of selected portions of the testimony did not amount to a retrial and was well within the trial court's sound discretion. Smith was not denied a fair trial by a replay of selected portions of the evidence.

## VI.

Lastly, Smith claims the trial judge failed to follow the dictates of statute and case law when he enhanced the presumptive sentence for the offense of robbery resulting in serious bodily injury and ordered that the sentences on all convictions be served consecutively. Smith's concern is that the sentencing judge listed the statutory considerations without also stating the particular facts pertinent to Smith which entered into his determination of sentence.

We have reviewed the sentencing statement and, contrary to Smith's assertions, find it adequate to sustain enhanced and consecutive sentencing. We note the sentencing court pointed to two aggravating factors peculiar to the case—Smith's revised version of the crime in the pre-sentence investigation report and the fact that the victim was defenseless at the time of killing—which, in addition to the statutory factors, affected the imposition of enhanced and consecutive sentences. One valid aggravating factor is sufficient to justify the imposition of increased and consecutive sentences. *See Guenther v. State* (1986), Ind., 501 N.E.2d 1071, 1072; *Little v. State* (1985), Ind., 475 N.E.2d 677, 685. In the absence of mitigating factors, the trial court's statement of reason need not articulate the balancing process between aggravating and mitigating factors. *Townsend v. State* (1986), Ind., 498 N.E.2d 1198, 1202. Nonetheless, as we have indicated, the cause must be remanded for resentencing of the robbery conviction as a class C felony.

The conviction of robbery resulting in serious bodily injury is ordered vacated, the cause is remanded for the entry of a judgment of conviction of robbery as a class C felony, and the trial court is directed to resentence Smith accordingly. In all other respects, the judgment is affirmed.

BAKER and STATON, JJ., concur.