Garnet D. EVERROAD and Gregory K.
Everroad, Appellants–Defendants,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 03A01–9005–CR–179.

Court of Appeals of Indiana,
First District.

April 15, 1991.

Kris Meltzer, Bate, Harrold & Meltzer, Shelbyville, for appellants-defendants.

Linley E. Pearson, Atty. Gen. and Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

## STATEMENT OF THE CASE

RATLIFF, Chief Judge.

Garnet D. Everroad and Gregory K. Everroad (Everroads) appeal their convictions of Dealing in Cocaine or a Narcotic Drug,[1] a class A felony; Dealing in Marijuana,[2] a class D felony; Dealing in Hashish,[3] a class D felony; and two (2) counts of Dealing in a Schedule I Controlled Substance,[4] a class B felony. We affirm in part, reverse in part, and remand for resentencing.

## ISSUES

The Everroads have raised twenty-two (22) issues for our consideration. We consolidate and restate them as follows:

1. Were the Everroads entitled to discharge pursuant to Ind.Crim.R. 4?

2. Did the trial court err in denying the Everroads' motion to suppress evidence seized from their mother's house?

3. Were the Everroads denied their right to due process and a fair trial when the investigating police officers failed to test the seized contraband for fingerprints?

4. Did the trial court err in allowing the attorneys who originally represented the Everroads to represent their co-defendants, and in trying all the defendants together?

5. Did the trial court err in summarily denying the Everroads' motions for change of venue and change of judge?

6. Did the trial court err in summarily denying the Everroads' motion to dismiss based on a challenge to the constitutionality of Indiana's Controlled Substances Act[5]?

7. Did the trial court err in arraigning the Everroads on the day trial was scheduled to begin?

8. Did the trial court err in failing to conduct voir dire in small, isolated groups?

9. Did the trial court err in refusing to dismiss juror Elifritz for cause?

10. Did the trial court err in failing to grant the Everroads' various motions for mistrial?

11. Did the trial court err in allowing the admission of various controlled substances despite the Everroads' challenge of the chain of custody?

---

1. IND.CODE § 35–48–4–1(2).

2. IND.CODE § 35–48–4–10(a)(2).

3. IND.CODE § 35–48–4–10(a)(2).

4. IND.CODE § 35–48–4–2(2).

5. IND.CODE §§ 35–48–1–1 *et seq.*

12. Were the Everroads entitled to a new trial because of various communications with the jury during deliberations?

13. Was the evidence sufficient to sustain the jury's guilty verdicts?

14. Did the trial court err in convicting and sentencing the Everroads on five (5) counts of drug-related offenses, when the counts were founded upon the violation of three (3) statutory provisions?

15. Was the trial court's imposition of consecutive sentences proper?

16. Did the trial court err in requiring the sentence in the present case be served consecutively with any sentence imposed in any other court?

17. Were the Everroads denied the effective assistance of trial and appellate counsel?

18. Were the Everroads denied their due process right to a speedy appeal?

## FACTS

The facts most favorable to the jury's guilty verdicts indicate that on the evening of October 26, 1979, police officers executed a search warrant for a stolen television set at the home of Norma Jean Everroad in Bartholomew County. Norma Jean, Nancy Calendar, Garnet, and Greg were in the house when the police arrived. The search for the television was unsuccessful; however, the officers observed various items throughout the house that appeared to be contraband. A second search warrant was issued to permit a search for controlled substances.

The second search of the home resulted in the seizure of a large quantity of controlled substances, including cocaine, marijuana, hashish, LSD, and methaqualone. The police also seized a microscope, a triple beam scale, and other paraphernalia.

Greg and Garnet were charged by information with dealing in cocaine, dealing in marijuana, dealing in hashish, and two (2) counts of dealing in a schedule I controlled substance. A jury trial resulted in their conviction of all five (5) counts, and they were sentenced to a total of fifty-four (54) years incarceration.

The Everroads now appeal. Additional relevant facts will be added in our discussion of the issues.

## DISCUSSION AND DECISION

*Issue One*

■ The Everroads claim they were entitled to discharge pursuant to Ind.Crim.Rule 4(C). When the Everroads were arrested, Crim.R. 4 provided:

"**(C) Defendant discharged.** No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Any defendant so held shall, on motion, be discharged."

■ Any delays caused by a defendant's acts extend the one-year time limitation by the length of such delays. *Andrews v. State* (1982), Ind., 441 N.E.2d 194, 199. Although both the Everroads and the State refer to October 30, 1979, as the date the action commenced, we find the one-year period began to run when the Everroads were arrested and charged on October 29, 1979. Crim.R. 4(C). Absent any delays chargeable to the Everroads, their trial should have begun no later than October 29, 1980; however, trial did not begin until December 7, 1981, some seven hundred seventy (770) days later.[6] We therefore must determine to whom the various delays are to be attributed.

■ On October 30, 1979, upon the Everroads' motion, the trial court contin-

6. There were three hundred sixty-six (366) days in 1980, as it was a leap year.

ued their arraignment until November 16, 1979. This delay, prior to the setting of a trial date, is not chargeable to the Everroads. *See Morrison v. State* (1990), Ind., 555 N.E.2d 458, 461; *State ex rel. O'Donnell v. Cass Superior Court* (1984), Ind., 468 N.E.2d 209, 211. The Everroads requested a change of judge on November 16, 1979, and Special Judge Westhafer qualified and assumed jurisdiction of the case on December 11, 1979. This delay of twenty-five (25) days clearly is chargeable to the Everroads. *State v. Tomes* (1984), Ind.App., 466 N.E.2d 66, 69.

■ On February 27, 1980, a trial date of June 2, 1980 was set. The Everroads filed a motion for continuance and a motion to suppress on May 13, 1980. The court continued the trial date and set the motion to suppress for hearing on June 2, 1980. On appeal, the State, citing *Battle v. State* (1981), 275 Ind. 70, 415 N.E.2d 39, claims the Everroads are chargeable with all the time from June 2, 1980, to July 20, 1981, the date for which trial was rescheduled following the denial of the motion to suppress. The State's reliance on *Battle* is misplaced. In *Battle*, "interim continuances during the evidentiary hearings on the motion to suppress were granted on the trial court's motions due to a congested court calender [sic] or as a result of defense counsel's other trial commitments. These delays were clearly the result of defendant's actions in filing his motion to suppress and requesting full evidentiary hearings on it prior to trial." *Id.* at 73, 415 N.E.2d at 41.

■ Such is not the case here. On May 28, 1980, the State filed a motion for continuance. The court granted the State's motion, and rescheduled the hearing on the Everroads' motion to suppress for July 16, 1980. Up to this point, there had been no calculable delay chargeable to the Everroads as a result of their motion to suppress. The Everroads filed a motion to continue the July 16, 1980, hearing. The court granted the motion and reset the hearing for July 29, 1980. This thirteen (13) day delay, from July 16 to July 29, is chargeable to the Everroads. It appears

that July 29, 1980, was allowed to pass without formal action by either party, and the record fails to indicate why the scheduled hearing was not held on that day. In light of the silent record, we may not charge the Everroads with any delay here. *Morrison*, 555 N.E.2d at 461; *Pillars v. State* (1979), 180 Ind.App. 679, 684–85, 390 N.E.2d 679, 683, *trans. denied.* Thus far, the Everroads are chargeable with a delay of thirty-eight (38) days.

■ Under Crim.R. 4(C), the State had until December 6, 1980 to bring the Everroads to trial (October 29, 1980, plus thirty-eight days). Because December 6, 1980 was a Saturday, the Everroads' trial should have begun on Monday, December 8, 1980. However, on October 22, 1980, the court set the hearing on the motion to suppress for December 9, 1980, a date clearly beyond the time limit imposed by Crim.R. 4(C). It is only reasonable to presume the Everroads knew their trial could not take place until still later; thus, their failure to object to the setting of the December 9, 1980 hearing constitutes a waiver of the delay. *State ex rel. Wernke v. Super. Ct. of Hendricks County* (1976), 264 Ind. 646, 650, 348 N.E.2d 644, 647. Thus, the forty-eight (48) day delay between October 22, 1980, and December 9, 1980, is chargeable to the Everroads. The delay chargeable to the Everroads now totals eighty-six (86) days.

■ The hearing on the Everroads' motion to suppress was held on December 9, 1980, and denied by the court on March 4, 1981. This delay of eighty-five (85) days is chargeable to the Everroads. *See Battle*, 275 Ind. at 70, 415 N.E.2d at 41. This brings the total number of days chargeable to the Everroads to one hundred seventy-one (171). The State thus had until April 18, 1981, to bring the Everroads to trial (October 29, 1980, plus 171 days).

■ On March 27, the court set a trial date of July 20, 1981. The Everroads filed a motion for discharge on March 19, 1981, which was denied by the trial court on April 15, 1981. Because the State had until April 18, 1981, to bring the Everroads to

trial, this motion for discharge was premature and properly overruled by the trial court. *Banks v. State* (1980), 273 Ind. 99, 100, 402 N.E.2d 1213, 1214; *Hughes v. State* (1987), Ind.App., 508 N.E.2d 1289, 1295, *trans. denied.*

 The Everroads filed no objection regarding the July 20, 1981, trial date until April 29, 1981. This was more than a month after the cause had been set for trial beyond the time limits of Crim.R. 4, and, therefore, was not at the earliest opportunity.

> "Although a defendant is not required to take any affirmative action to obtain a trial date within the one-year period, *Huffman v. State* (1987), Ind., 502 N.E.2d 906, 908, he does have a duty to alert the court when a trial date has been set beyond the one-year period. If a trial date has been set beyond the proscribed limits and the defendant does not object at his earliest opportunity, he will be deemed to have acquiesced to the new date. *Decker v. State* (1988), Ind., 528 N.E.2d 1119. The time limit is extended if the defendant actively seeks delay or acquiesces in any delay which results in a later trial date. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085."

*Snow v. State* (1990), Ind.App., 560 N.E.2d 69, 75–76, *trans. denied.* We find the Everroads acquiesced to the July 20, 1981 trial date. The record before us fails to indicate why the Everroads' trial did not begin on July 20, 1981. However, on July 22, 1981, the Everroads filed a motion for a continuance in which they stated the trial was set for July 22, 1981; thus, the Everroads acceded to the July 22, 1981, trial date. *See Morrison,* 555 N.E.2d at 461.

The record indicates all subsequent delays were the result of the Everroads' various motions for continuance. The Everroads were not entitled to discharge pursuant to Crim.R. 4.

*Issue Two*

 The Everroads assert the trial court erred in denying their motion to suppress, claiming Officer Coon provided false information in his probable cause affidavit for the first search warrant. We do not reach the merits of this contention because we find that neither Garnet nor Greg have standing to challenge the search of their mother's home.[7]

A defendant has no constitutional right to challenge the search or seizure of another person's property. *Hester v. State* (1990), Ind.App., 551 N.E.2d 1187, 1189. "[I]n order to challenge a search as unconstitutional, a defendant must have a legitimate expectation of privacy in that which is searched." *Livingston v. State* (1989), Ind., 542 N.E.2d 192, 194 (citing *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387); *Lee v. State* (1981), Ind. App., 419 N.E.2d 825, 828. The burden is on an appellant challenging the constitutional validity of a search to demonstrate that he had such a legitimate expectation in the premises searched. *Livingston,* 542 N.E.2d at 194.

It is undisputed that Garnet and Greg's mother, Norma Jean, owned the house searched by the police. On October 26, 1979, Garnet maintained his own residence in Brown County: he had moved most of his belongings out of his mother's house, although a few items remained. At trial, Garnet testified as follows:

> "Q And uh do you uh, at the time uh were you residing here with your mother?
>
> A No, I had a residence on Greasy Creek Road which is about a mile, mile and a half from Nashville in Brown County.
>
> Q And how long had you lived there?
>
> A I'd lived there basically probably five weeks.
>
> . . . . .
>
> Q And had you, where had you lived before moving outside Nashville?

---

7. We note that on appeal only Garnet's standing is addressed by the parties. However, we will uphold the trial court's judgment if it is sustainable upon any legal theory or basis found in the record. *See Bruce v. State* (1978), 268 Ind. 180, 200, 375 N.E.2d 1042, 1054, *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662.

A I'd lived in several different locations. Since my father is deceased, I'd lived with my mother and help [sic] my mother try to raise my little sister, Sherry.

Q And uh then when you, had you moved out everything of yours uh by the time this search took place, Garnet?

A I think basically everything except my laundry. My mother did my laundry a couple times a week for me."

Record at 3279–80. Garnet occasionally spent the night at his mother's house; however, when he did so, he used his sister's bedroom. Garnet testified that on the evening of October 26, 1979, he went to his mother's house at the request of his sister and was there approximately an hour before the police arrived. In sum, the record indicates that Garnet was, at best, a casual visitor at his mother's house. Garnet points to no evidence, nor have we found any, tending to show he maintained a degree of control over, or had a legitimate expectation of privacy in, his mother's house. See Stout v. State (1985), Ind., 479 N.E.2d 563, 567.

■ Greg, by his own admission, was in the process of moving out of his mother's house in October of 1979 and stayed at his mother's "off and on." Record at 3239. At trial, Greg testified that when he arrived at his mother's house on the evening of October 26, 1979, he attempted to comfort his mother:

"Q Was your mother, you told this jury that you were trying to comfort [your mother]. Tell them what you mean by that.

A Well she's got high blood pressure and I'm sure anyone in the court has a mother that's got high blood presure and she was upset as she was, they would try to comfort her too.

Q I said why?

A These things on the floor [referring to items seized by police]

Q She was aware of them?

A I could tell she was aware it [sic], because she didn't want nothing like that in her house.

Q Who'd she tell that to?

A Well she told it to me, but you know like I said I was with her and she said, you know she was telling me to get this, you know get all that stuff out of here and I mean now and er er. I was going I'm sorry, mom, I just come you know sure."

Record at 3250–51.

After a careful review of the record, we find no support for the conclusion that Greg had a legitimate expectation of privacy in the premises searched. Any control Greg may have had over the bedroom in which he stayed "off and on" was completely defined by, subordinate to, and dependent upon the will of his mother and her right to control the entire premises. See Livingston, 542 N.E.2d at 194; Murrell v. State (1981), Ind., 421 N.E.2d 638, 641. The Everroads have failed to carry their burden of proving they have standing to challenge the constitutionality of the search. We find no error in the trial court's denial of the Everroads' motion to suppress.

*Issue Three*

■ The Everroads claim their right to due process and a fair trial was violated when the police failed to test the seized contraband for fingerprints. They claim the failure to obtain fingerprints was tantamount to the negligent destruction of possibly exculpatory evidence.[8] We first note the Everroads' failure to object or make a motion concerning the lack of fingerprints either prior to or during trial results in a failure to preserve the issue for appellate review. *Madison v. State* (1989), Ind., 534 N.E.2d 702, 706.

■ Notwithstanding this fact, we find the Everroads' argument to be without merit. While it is true that the negligent destruction of material evidence may constitute grounds for reversal, *Lee v. State* (1989), Ind., 545 N.E.2d 1085, 1089, the

---

**8.** We find the Everroads' claim that the fingerprints would have shown that their cousin actually had control of the contraband to be purely speculative.

Everroads cite no authority which extends this rule to cases involving evidence never possessed by the prosecution or police. In addition, the Everroads neither allege nor establish bad faith on the part of the investigating police officers. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Madison*, 534 N.E.2d at 707 (quoting *Arizona v. Youngblood* (1988), 488 U.S. 51, 58, 109 S.Ct. 333, 342, 102 L.Ed.2d 281, 289). We find no error here.

*Issue Four*

■ Prior to trial, attorneys William Marshall and David Colman entered appearances for Greg, Garnet, Nancy, and Norma Jean. On August 20, 1981, Marshall and Colman filed motions to withdraw their appearance on behalf of Garnet and Greg. The record indicates that Colman represented Nancy and Marshall represented Norma Jean at trial. Garnet and Greg filed affidavits with their Motion to Correct Errors in which they stated that Marshall had represented Greg in a previous criminal case and that Colman had represented both Greg and Garnet in a previous criminal case. On appeal, the Everroads claim the trial court erred in allowing their former attorneys to continue representation of Norma Jean and Nancy.

■ The Everroads failed to object to Marshall and Colman's continued representation of Nancy and Norma Jean. A party may not await the result of trial and then claim an error which was not raised at the proper time during trial. *Stevens v. State* (1989), Ind., 531 N.E.2d 1175, 1177. In order to obtain a reversal, the Everroads must demonstrate prejudicial error resulted from their former attorneys' continued representation of their co-defendants. *See id.* The Everroads note that "when cross-examining Gregory K. Everroad, [Marshall] brought up the fact that Defendant, Gregory K. Everroad, had been charged with Dealing in Marijuana in a 1975 case." Appellant's brief at 30 (citation to the record omitted). However, Greg's previous

charge is a matter of public record, and the Everroads do not claim their former attorneys used, while representing Nancy and Norma Jean, any confidential information obtained during their previous representation of the Everroads.

Because they have failed to demonstrate any resulting prejudice, we find the Everroads are precluded from alleging the trial court erred in allowing Marshall and Colman's continued representation of Nancy and Norma Jean, and we will not discuss the wisdom of the trial court's decision in this matter.

■ The Everroads also claim they should not have been tried together with their co-defendants, Nancy and Norma Jean. While Norma Jean and Nancy filed motions for severance prior to trial and orally requested severance at the commencement of trial, Greg and Garnet failed to join in these motions. "Where a defendant fails to request a separate trial, he cannot rely on a codefendant's motion for severance to preserve an error for appellate review." *Scott v. State* (1980), Ind. App., 409 N.E.2d 1184, 1187–88. Our review of the record indicates that neither Garnet nor Greg filed a motion for severance at any time prior to or during trial; therefore, this issue has not been preserved for our review. *Townsend v. State* (1989), Ind., 533 N.E.2d 1215, 1225, *cert. denied,* —— U.S. ——, 110 S.Ct. 1327, 108 L.Ed.2d 502.

*Issue Five*

■ The Everroads assert trial court error in the summary denial of their Motion for Change of Judge filed July 15, 1981, and renewed on December 7, 1981, the first morning of trial. We note this motion first was filed approximately twenty (20) months after the granting of their first motion for change of judge on November 16, 1979. Although the Everroads did not enter a formal plea of not guilty until their arraignment on December 7, 1981, we "consider their motion as one which, under Ind. Rules of Procedure, Criminal Rule 12, must be 'verified by the party himself specifically alleging when the cause was first discov-

ered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence.' " *Hickman v. State* (1989), Ind.App., 537 N.E.2d 64, 65.

Though stating that defense counsel did not learn of the alleged judicial bias until July 15, 1981, the motion failed to allege when the Everroads learned of it or why it could not have been discovered before by the exercise of due diligence. Furthermore, we agree with the State that the Everroads failed to allege specific facts supporting their belief that the trial judge was biased or prejudiced. In their motion, the Everroads claimed the judge was biased because he had been in the audience at another of Garnet's criminal proceedings. This information is insufficient to establish judicial bias. *See Kindred v. State* (1989), Ind., 540 N.E.2d 1161, 1173. We find no error in the summary denial of the Everroads' motion for change of judge, which failed to comply with the requirements of Crim.R. 12.

■ The Everroads also claim trial court error in the summary denial of their motion for change of venue. The Everroads' motion, filed on July 15, 1981, asserted that extensive pre-trial publicity prevented them from receiving a fair jury trial in Bartholomew County. The motion also stated "[t]his publicity has been an on going [sic] matter, and the extent of it has only come to counsels [sic] attention as of this date." Record at 408. The trial court took the motion under advisement pending voir dire, and denied the motion upon its completion.

The motion states neither how the alleged cause came to the Everroads' attention nor why it could not have been discovered before by the exercise of due diligence. It also fails to allege specific facts surrounding the alleged cause. Because the motion fails to comply with the requirements of Crim.R. 12, we find no error in the trial court's refusal to hold a hearing on the motion. *See Hickman*, 537 N.E.2d at 66.

■ Neither do we find merit in the Everroads' claim the trial court should have granted the motion. The decision of whether to grant a motion for change of venue rests within the sound discretion of the trial court. *Hughes v. State* (1989), Ind., 546 N.E.2d 1203, 1205. "To establish the trial court's abuse of discretion in denying a motion to change venue, the defendant must show prejudicial pretrial publicity and juror inability to render an impartial verdict on the evidence." *Schweitzer v. State* (1989), Ind., 531 N.E.2d 1386, 1389.

This the Everroads have not done. Their argument on appeal is as follows:

"Defendants contend that after voir dire, several of the seated jury members harbored prejudice even though they stated to the Court that they thought they could set such notions aside. Defendants contend that the Judge should have discharged the entire panel and granted the requested change. The media coverage, in the instant case, was far too great and prejudicial to take a chance on a fair trial."

Appellant's brief at 71. We find the Everroads have failed to carry their burden of showing the jurors could not render an impartial verdict. Therefore, the trial court's denial of the Everroads' motion for change of venue did not constitute an abuse of discretion.

*Issue Six*

■ On November 25, 1981, less than two (2) weeks before trial was scheduled to begin, Garnet filed a motion to dismiss, in which he challenged the constitutionality of Indiana's Controlled Substances Act. The motion was summarily denied by the trial court. On appeal, the Everroads claim the trial court erred in failing to grant Garnet an evidentiary hearing on his motion.

We do not agree. When Garnet filed his motion to dismiss, our supreme court already had decided that Indiana's cocaine classification scheme was constitutional. *Hall v. State* (1980), 273 Ind. 425, 403 N.E.2d 1382. Thus, any error in the trial court's failure to grant Garnet an evidentiary hearing on his motion to dismiss was harmless.

*Issue Seven*

■ On December 7, 1981, prior to the start of trial, the Everroads objected to trial because they had not yet been arraigned. The court denied the motion, arraigned the Everroads, and proceeded with the trial. On appeal, the Everroads claim they were entitled to a dismissal because they objected to the lack of arraignment prior to trial. They are mistaken.

We note the purpose of an arraignment is to give the accused notice of the charges being brought against him and to permit him to enter a plea. *Walker v. State* (1983), Ind., 444 N.E.2d 842, 844. The Everroads correctly note they were entitled to an arraignment before trial. However, "[t]here is no Indiana statute or court rule which fixes a specific time within which a defendant must be arraigned and, in the absence of such a specific provision, an appellant must show that such delay was both unreasonable and prejudicial." *Thompson v. State* (1980), Ind., 400 N.E.2d 1151, 1152–53. The Everroads have failed to allege they were prejudiced by the holding of their arraignment the morning of trial. We thus find no merit in their claim they were entitled to have the charges against them dismissed. *See also Weaver v. State* (1882), 83 Ind. 289 (after jury was empanelled and sworn, trial court, upon discovering defendant had not been arraigned, arraigned the defendant, reswore the jury, and proceeded with trial).

*Issue Eight*

■ The trial court denied the Everroads' request to have voir dire conducted in small, segregated groups. The trial court has broad discretion to regulate the form and substance of voir dire proceedings. *Gregory v. State* (1989), Ind., 540 N.E.2d 585, 595. In addition, a defendant has no absolute right to have individualized voir dire of prospective jurors, although such may be required where the circumstances are highly unusual or potentially damaging to the defendant. *Lowery v. State* (1989), Ind., 547 N.E.2d 1046, 1049, *cert. denied* — U.S. ——, 111 S.Ct. 217, 112 L.Ed.2d 176. We will not review a trial court's determination in these matters absent a clear showing of abuse of discretion. *Gregory*, 540 N.E.2d at 595. Furthermore, "[t]he defendant must show he was prejudiced by the decision." *Id.*

The Everroads claim extensive pre-trial publicity of the case created the potential for the spread of bias and prejudice, and this potential was aggravated because of the trial court's failure to conduct voir dire in small, segregated groups. However, the Everroads make no showing of highly unusual or potentially damaging circumstances in their case, nor do they show how they were actually prejudiced by the trial court's denial of their motion for voir dire in small, segregated groups.

The trial court's determination did not constitute an abuse of discretion.

*Issue Nine*

■ The Everroads contend the trial court erred in refusing to dismiss a prospective juror for cause. The record indicates that after being accepted by both the State and defense, juror Elifritz indicated an unknown person called her the night before and offered her a bribe to find the Everroads innocent. Juror Elifritz was questioned extensively regarding her ability to remain fair and impartial, and she assured the court and defense counsel that although she was upset by the call, she did not attribute the call to any of the parties, the call did not affect her judgment, and she could remain fair and impartial. Defense counsel did not raise an objection to juror Elifritz at this point.

After further voir dire proceedings, the Everroads asked the court to modify its procedure and allow them to strike any previously accepted juror. The trial court stated it would allow any party to strike juror Elifritz peremptorily, but denied the Everroads' request as to the other jurors. The Everroads then indicated juror Elifritz should be struck for cause, but the trial court did not agree. Despite being given the opportunity to do so, the Everroads did not challenge juror Elifritz peremptorily.

The record indicates that the Everroads had not exhausted all of their peremptory challenges at the time of the challenge in

issue; therefore, we find this issue has been waived. *See Brackens v. State* (1985), Ind., 480 N.E.2d 536, 539.

*Issue Ten*

■ The Everroads allege the trial court improperly denied three (3) motions for mistrial. The first motion for mistrial was made during the State's cross examination of Greg, when the following colloquy took place:

"Q On October 26, 1979, or uh in that general time period. Say a month prior to that or that general time frame.

A Uh-huh.

Q Did you have occasion to possess cocaine?

A No.

Q Did you ever profit from any money made from the sale of cocaine?

A No.

Q I'll ask you to identify what's been marked State's Exhibit 84 and tell me who that is please.

A That's I.

Q Where are you?

A On a bed.

Q What are you holding?"

Record at 3259–60. The defense requested a mistrial, claiming the State's reference to the photograph was a violation of a motion in limine and constituted an evidentiary harpoon. The court denied the motion, and allowed the State to continue as follows:

"Q With respect to October 26, 1979, when was that taken?

A Sometime early summer.

Q Of 1979?

A That's correct.

Q So what, two to four months prior to October roughly?

A I would say, I said early summer."

Record at 3263–65. The court indicated the photograph would not be admitted into evidence, and the Everroads renewed their motion for mistrial. The court denied the motion, stating, "I don't attach any particular prejudice by the, by what's occurred so far." Record at 3271. On appeal, the Everroads claim the jury was led to believe Greg previously had possessed cocaine.

We disagree. We remind the Everroads that a mistrial is an extreme remedy and should be granted only when nothing else can rectify a situation. *Szpyrka v. State* (1990), Ind., 550 N.E.2d 316, 318. In addition,

"A trial court has discretion whether to grant a mistrial, and this decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. To succeed on appeal from the denial of a motion for mistrial, the defendant must demonstrate the conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct."

*Kelley v. State* (1990), Ind., 555 N.E.2d 140, 141 (citations omitted).

Neither the photograph nor a description of what it depicted was placed before the jury, and we find the Everroads were not placed in grave peril. *See Collins v. State* (1981), Ind., 429 N.E.2d 623, 624 (no testimony that appellant was suspected of previous criminal activity was adduced by the State during trial; held, no abuse of discretion in court's refusal to grant a mistrial). Furthermore, the trial court admonished the jury to disregard any references to the photograph. Such an admonishment generally is considered adequately curative and will support the trial judge in his denial of the mistrial. *Underwood v. State* (1989), Ind., 535 N.E.2d 507, 518, *cert. denied*, — U.S. —, 110 S.Ct. 257, 107 L.Ed.2d 206, *rh'g denied*, — U.S. —, 110 S.Ct. 524, 107 L.Ed.2d 524.

We find the trial court's admonishment to the jury cured any prejudicial impact upon the Everroads' case, and the trial court did not abuse its discretion when it denied their motion for mistrial.

■ The Everroads also claim they were prejudiced unfairly when reference was made to the fact that the initial search

warrant was obtained for the purpose of searching for a stolen television set. The Everroads moved for a mistrial when the prosecutor referred to this fact during opening statements, and again when Officer Coon testified as to the reason the police went to Norma Jean's home on the night of October 26, 1979. The trial court denied both motions.

As the Everroads correctly note, evidence of uncharged criminal activity is inadmissible to prove a defendant's guilt. *Chinn v. State* (1987), Ind., 511 N.E.2d 1000, 1004. However, exceptions to the rule exist. Under one of these exceptions, the theory of *res gestae,* "evidence of events near in time and place to the charged crime is admissible to complete the story of the commission of the charged offense, notwithstanding that this evidence includes testimony about uncharged offenses." *Hudson v. State* (1986), Ind., 496 N.E.2d 1286, 1290 (citations omitted). Furthermore, "[a]n opening statement to the jury may relate what the State expects the evidence presented at the trial will be, including evidence of uncharged offenses." *Tacy v. State* (1983), Ind., 452 N.E.2d 977, 981.

In the present case, evidence was presented that explained the police were at Norma Jean's home to search for a stolen television set. The jury was also informed that the television set was not found at Norma Jean's residence. This evidence helped to "complete the story," and the trial court did not err in denying the Everroads' motion for mistrial.

The Everroads again moved for a mistrial during the testimony of Robert Talkington, Chief of Police of Columbus. While Chief Talkington was describing his actions on the night of October 26, 1979, the following colloquy occurred:

"Q Did you have occasion to go into the garage?
A At a later, in the early morning hours of October 27, yes sir.
Q Now.
A Excuse me.
Q I'm sorry.
A Excuse me. I did go in the garage on October 26th at approximately 9:10 p.m. to talk to Garnet. I read Garnet his rights, and had intentions of asking him questions.
MR. STANTON: Your Honor, uh, I didn't, I didn't mean to object.
A That's it.
Q Okay. Was that the extent of your conversation? With him? At that time?
A He didn't want to talk without counsel present. That was it."

Record at 2684. The trial court denied the Everroads' motion for mistrial, and admonished the jury to disregard the testimony regarding any conversations between Chief Talkington and Garnet Everroad.

On appeal, the Everroads claim Chief Talkington's comment on Garnet's post-arrest silence was in violation of *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, and that "the testimony was so prejudicial that a simple instruction cannot cure the harm that was already done." Appellant's brief at 74. We do not agree.

"It is improper for a prosecutor to make or induce comments about a defendant's post-arrest silence in order to 'impeach an explanation subsequently offered at trial.'" *Cook v. State* (1989), Ind., 544 N.E.2d 1359, 1363 (quoting *Doyle,* 426 U.S. at 618, 96 S.Ct. at 2245, 49 L.Ed.2d at 98). However, the record before us indicates Chief Talkington's comment was an isolated instance. We find no indication that the State sought to use Garnet's silence to impeach him; indeed, the witness's statement was not responsive to the prosecutor's question. Moreover, the trial court promptly admonished the jury to disregard any reference to Garnet's post-arrest silence.

Under these circumstances, we find the fact of Garnet's post-arrest silence "was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred in this case." *Greer v. Miller* (1987), 483 U.S. 756, 764–65, 107 S.Ct. 3102, 1308, 97 L.Ed.2d 618, 630 (footnote omitted). *See also Cook v. State* (1989), Ind., 544 N.E.2d 1359, 1363 (isolated comment

regarding defendant's post-arrest silence, with no specific inquiry or argument by prosecutor regarding same, followed by court's admonition to jury to disregard the reference, did not require grant of defendant's motion for mistrial).

The trial court properly denied the Everroads' motions for mistrial.

### Issue Eleven

The Everroads challenge the admission of various controlled substances into evidence, claiming the State failed to establish a proper chain of custody.[9] When the evidence is fungible, as in the case of drugs, the State's burden is to give reasonable assurance the property passed through the hands of the parties in an undisturbed condition. *Robles v. State* (1987), Ind., 510 N.E.2d 660, 665, *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2872, 101 L.Ed.2d 907. The State need not exclude all possibility of tampering, however, and an argument which merely raises the possibility of tampering with the evidence is without merit. *Gardner v. State* (1987), Ind., 514 N.E.2d 1261, 1262.

The Everroads assert the weight of some controlled substance noted by Chemist Forbes differed from the amount noted by Officer Baker on the probable cause affidavit. However, Officer Baker testified he weighed some cocaine at the Everroad home on the triple beam scale found there, and that the scale may not have been accurate. The Everroads also claim they offered testimony which indicated the drugs had been tampered with. However, our review of the record fails to indicate any use of the controlled substances in other drug sales prior to being tested by Forbes. Indeed, we find no indication the controlled substances were not at all times within the control of the police department. In sum, we find the Everroads have raised nothing more than a mere potential for tampering, and thus have demonstrated no reversible error.

### Issue Twelve

The Everroads claim they are entitled to a new trial because of various communications with the jury during deliberations. They first note that neither they nor their counsel were present when the jury was called into court during deliberations. We agree with the Everroads that communication between the judge and deliberating jury in a defendant's absence is improper: "An inference of prejudice arises from an *ex parte* communication and this inference creates a rebuttable presumption that error has been committed." *Marsillett v. State* (1986), Ind., 495 N.E.2d 699, 709. However, as the State notes, the record indicates the trial court merely questioned the jury as to the likelihood of a verdict and sent them back to continue their deliberations. The State has rebutted the presumption of prejudice and we find no reversible error. *See Harris v. State* (1967), 249 Ind. 681, 692–93, 231 N.E.2d 800, 806.

The Everroads were present when the jury returned with its verdicts. The court informed the jury that the tendered verdict forms were confusing, and instructed them that they could not find any defendant guilty of both the offense charged and the lesser included offense. The jury was then sent back to continue deliberations. The Everroads claim that it was error for the court to instruct the jury as to verdicts they could or could not find and that the court's only duty was to send the jury back for further deliberation.

They are mistaken. The Everroads could not be convicted of both the greater and lesser offenses; thus, the court's instruction was proper. *See Mason v. State* (1989), Ind., 532 N.E.2d 1169, 1172, *cert. denied* 490 U.S. 1049, 109 S.Ct. 1960, 104 L.Ed.2d 428; *Collins v. State* (1988), Ind., 520 N.E.2d 1258, 1261. Furthermore, "it is the duty of the trial court before discharging a jury to examine the verdict and if found to be irregular, to instruct the jury further as to the proper form of verdict."

9. They also claim the controlled substances were inadmissible because the State failed to establish a connection between the controlled substances and the Everroads. However, because they support this statement with neither cogent argument nor citation to relevant authority, they have waived this argument on appeal. App.R. 8.3(A)(7).

*Brooks v. State* (1982), Ind., 434 N.E.2d 878, 882 (citations omitted). The trial judge acted properly and we find no error here.

■ The Everroads also claim they are entitled to a new trial because the bailiff explained the verdict forms to the jury. This claim is based on the affidavits of two (2) jurors. Although as a general rule a juror may not impeach his own verdict, *Bixler v. State* (1984), Ind., 471 N.E.2d 1093, 1098, *cert. denied*, 474 U.S. 834, 106 S.Ct. 106, 88 L.Ed.2d 86, a juror's affidavit may be considered where, as here, the alleged misconduct is that of a third person. *See Wallace v. State* (1977), 266 Ind. 344, 346, 363 N.E.2d 956, 957.

We have examined the jurors' affidavits carefully. One juror could not remember what the bailiff told the jury; the other juror stated the bailiff merely repeated the judge's instruction that they could not find the Everroads guilty of both the greater and lesser offenses. Certainly the bailiff should not have spoken with the jury. However, as we are satisfied that no harm or prejudice resulted from the bailiff's misconduct, we find no reversible error. *See Frasier v. State* (1974), 262 Ind. 59, 68, 312 N.E.2d 77, 81–82, *cert. denied*, 419 U.S. 1092, 95 S.Ct. 686, 42 L.Ed.2d 686.

*Issue Thirteen*

■ Acknowledging that we will neither reweigh the evidence nor rejudge the credibility of witnesses,[10] the Everroads contend there is insufficient evidence to support the jury's guilty verdicts. The State admits the Everroads did not have physical possession of the cocaine and other controlled substances found in their mother's home. However, a conviction for possession of illegal drugs may be sustained by proof of constructive possession. *Bergfeld v. State* (1988), Ind., 531 N.E.2d 486, 490. "Constructive possession is the intent and capability to maintain dominion and control over the illegal drugs." *Id.* On appeal, the Everroads claim the State failed to establish the element of intent.

■ The Everroads did not have exclusive possession of the home in which the contraband was found, and their mere presence where the drugs were located is not alone sufficient to support a finding of constructive possession. *See Lewis v. State* (1985), Ind.App., 482 N.E.2d 487, 491. Thus, additional circumstances must exist which point to their knowledge of the contraband and its presence. *See Bergfeld*, 531 N.E.2d at 490; *Lewis*, 482 N.E.2d at 491. Such "additional circumstances" include, but are not limited to: incriminating statements by the defendant; attempted flight or furtive gestures; a manufacturing setting; proximity of the defendant to the drugs; drugs that are in "plain view"; and the location of contraband in close proximity to items owned by the defendant. *Carnes v. State* (1985), Ind.App., 480 N.E.2d 581, 586. "In each of these instances of 'additional circumstances' exists the probability that the presence and character of the contraband was noticed by the defendant." *Id.* Furthermore, "[e]vidence of the illegal possession of a relatively large quantity of drugs is sufficient to sustain a conviction for possession with intent to deliver." *Beverly v. State* (1989), Ind., 543 N.E.2d 1111, 1115.

In the present case, large quantities of controlled substances and other paraphernalia were found in plain view throughout the home. Both Garnet and Greg testified they had been at their mother's home approximately forty-five (45) minutes to an hour before the police arrived. Garnet testified that when the police arrived, he slammed the curtains shut because "[t]here was a great deal of controlled substance on the table; and if I could possible [sic] hide it, I was going to." Record at 3296. We have already noted that when Norma Jean ordered Greg to take all the contraband out of her house, Greg responded, "I'm sorry, mom, I just come you know sure." Record at 3251. We find the evidence reasonably supports the inference that both Greg and Garnet Everroad knew of the presence and nature of the drugs found in their mother's home.

10. *See Bartruff v. State* (1990), Ind., 553 N.E.2d 485, 486.

■ In cases in which the evidence is circumstantial, it is not necessary that every reasonable hypothesis of innocence be overcome, but only that an inference which supports the jury verdict reasonably may be drawn. *Beverly*, 543 N.E.2d at 1115. The Everroads testified the drugs belonged to a cousin and they were merely trying to remove the contraband from their mother's home; however, the jury was not required to believe their version of the story. *See Abernathy v. State* (1988), Ind., 524 N.E.2d 12, 13.

The evidence was sufficient to support the jury's verdicts.

*Issue Fourteen*

■ The Everroads assert trial court error in the imposition of consecutive sentences on all five (5) counts: Count I was a violation of I.C. § 35–48–4–1(2) (dealing in cocaine); Counts II and III were violations of I.C. § 35–48–4–10(2) (dealing in marijuana or hashish); and Counts IV and V were violations of I.C. § 35–48–4–2(2) (dealing in a Schedule I controlled substance). Specifically, they note that their convictions all stem from possession of several controlled substances at the same place and time, and that they were found guilty of violating only three (3) statutory provisions.

We agree the trial court erred when it sentenced the Everroads on all five counts. In *Duncan v. State* (1980), Ind., 412 N.E.2d 770, our supreme court held "a single sales transaction between the same principals at the same time and place which violates a single statutory provision does not justify conviction of and sentence for separate crimes even though more than one controlled substance is involved." *Id.* 412 N.E.2d at 775–76.[11] *See also Bates v. State* (1978), 178 Ind.App. 153, 381 N.E.2d 552 (where defendant was charged with two counts, each involving delivery of a Schedule III drug during the same transaction, it was error to sentence defendant on both counts).

As we apply the holdings in these cases to the facts before us, we find the Everroads could have been convicted of and sentenced on only three (3) counts. Therefore, we remand this case for resentencing, with instructions for the trial court to vacate judgment and sentence on either Count II or III, and either Count IV or Count V.

*Issue Fifteen*

■ The Everroads were sentenced to the presumptive term for each offense and ordered to serve these terms consecutively. The Everroads claim the trial court failed to list sufficient aggravating circumstances that would support the imposition of consecutive sentences. They are mistaken.

> "Ind.Code § 35–50–1–2(a) gives the trial court wide discretion in determining whether the sentences on multiple convictions are to run concurrently or consecutively. When a court imposes consecutive terms of imprisonment, the record should disclose articulated facts that support a finding of the presence of at least one of the aggravating circumstances delineated in Ind.Code § 35–38–1–7(b)."

*Brown v. State* (1986), Ind., 497 N.E.2d 1049, 1052 (citations omitted).

At the Everroads' sentencing hearing, the trial court specifically referred to Greg and Garnet's criminal history and the fact they had pending drug charges against them.[12] The court also noted the chronic problem of drug abuse in American society and stated the imposition of a lesser sentence would depreciate the seriousness of the offense. These aggravating factors adequately support the court's decision to impose consecutive sentences. *Id.; Kail v. State* (1989), Ind.App., 528 N.E.2d 799, 810, *trans. denied.*

We find no abuse of discretion in the trial court's sentencing of the Everroads.

---

11. Because we are duty-bound to follow the rules set forth by our supreme court regarding multiple sentences in drug cases, we decline the State's invitation to find the holding in *Duncan* erroneous.

12. We find no support in the record for the Everroads' claim that Greg's Brown County case has been reversed.

*Issue Sixteen*

■ The Everroads were convicted of various criminal offenses while out on bond in the present case. The Everroads challenge the following portion of the trial court's sentencing order: "These sentences will run consecutive with one another and will run consecutive to any other sentences that have been, or will be, imposed in any other court." Record at 678. The Everroads contend, and the State concedes, our supreme court has decided this issue favorably to the Everroads. *See Bartruff,* 553 N.E.2d at 487–88; *Kendrick v. State* (1988), Ind., 529 N.E.2d 1311, 1312; *White v. State* (1986), Ind., 497 N.E.2d 893, 906. We decline the State's invitation to find our supreme court's holdings in *Bartruff* and *Kendrick* are erroneous. We therefore remand this cause with instructions for the trial court to delete the requirement that the sentences in this cause be served consecutively to any sentence imposed in any other court.

*Issue Seventeen*

■ The Everroads contend they were denied effective assistance of trial counsel, claiming defense counsel failed to object when Officer Baker testified as to statements made to him by Norma Jean. We have reviewed that portion of the record cited by the Everroads, and find the Everroads' trial counsel did in fact object to the testimony. This contention thus has no merit.

■ The Everroads claim they were also denied effective assistance of appellate counsel. Specifically, they assert their prior appellate counsel failed to prosecute their appeal in a timely manner. To carry their burden on this issue, the Everroads

> "must show deficient performance by counsel and resulting prejudice so serious as to deprive [them] of an effective appeal. [They] must show the identified acts or omissions of counsel were outside the wide range of professionally competent assistance consistent with elaborated professional norms. [They] must further show there is a reasonable probability but for counsel's unprofessional er-

rors, the result of the proceeding would have been different."

*Ingram v. State* (1987), Ind., 508 N.E.2d 805, 808 (citations omitted).

The Everroads cite several acts and omissions of prior appellate counsel which resulted in the delay of their appeal. However, the Everroads fail to allege, let alone demonstrate, that but for prior counsel's delay, the result of their appeal would have been different. Even if we were to agree prior appellate counsel's performance was deficient, this fact alone is not enough to support a finding of ineffective assistance of appellate counsel. *Id.* The Everroads have failed to meet their burden here.

*Issue Eighteen*

■ The Everroads were sentenced on January 15, 1982, and the record of the proceedings was not filed until June 13, 1990. The Everroads claim they were denied the right to a timely and speedy appeal. We first note there is no Sixth Amendment right to a speedy appeal. *Gajdos v. State* (1984), Ind., 462 N.E.2d 1017, 1023. However, when a state provides a right to appeal, it must meet the requirements of due process and equal protection. *See id.* We agree that a delay in the appellate process may result in a denial of due process. *See, e.g., Simmons v. Reynolds* (2d Cir.1990), 898 F.2d 865; *Rheuark v. Shaw* (5th Cir.1980), 628 F.2d 297, 303, *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365; *Wheeler v. Kelly* (E.D.N.Y.1986), 639 F.Supp. 1374, *aff'd* (2d Cir. 1987), 811 F.2d 133. However, "not every delay in the appeal of a case, even an inordinate one, violates due process." *Rheuark,* 628 F.2d at 303.

■ In determining whether a delay of a prisoner's appeal violates due process, courts generally evaluate the case in light of the four factors set forth in *Barker v. Wingo* (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101, 116. *See Rheuark,* 628 F.2d at 303; *Simmons,* 898 F.2d at 868, *Wheeler,* 811 F.2d at 135. These factors are (1) the length of the delay; (2) the reason for the delay; (3) the defendant's responsibility to assert his right, and

(4) the resulting prejudice to the defendant. *Barker*, 407 U.S. at 530–32, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 116–118. In doing so, we note that "no one factor is dispositive and all are to be considered together with the relevant circumstances." *Simmons*, 898 F.2d at 868.

At first blush it would appear the length of delay, approximately eight (8) years, was excessive. However, we note the record in this cause consists of almost thirty-five hundred (3,500) pages. The Everroads have raised twenty-two (22) allegations of error, filed a seventy-five (75) page appellant's brief and a forty-four (44) page reply brief. In sum, this was hardly a "routine" appeal. *Cf. Simmons*, 898 F.2d at 868. The reasons for the delay are many. While we are not unaware of the delay caused by inaction of appellate counsel, and do not condone it, we note the Everroads also contributed to the delay by failing to cooperate in indigency determination hearings. The record indicates the Everroads have been diligent in asserting their desire for an appeal through correspondence with both counsel and the court: such conduct can hardly be deemed a waiver.

As for resulting prejudice, we note the interest in minimizing a prisoner's anxiety, and limiting the possibility that grounds for appeal, and defense in case of reversal and retrial, might be impaired. *Wheeler*, 639 F.Supp. at 1381. When the record of the proceedings was filed, the Everroads had served approximately one-seventh of their sentence. In such a case, we find it unlikely they had an expectation of an early release. *See id.* The Everroads fail to indicate how grounds for their appeal are unavailable, or how defense in case of reversal and retrial is impaired as a result of the delay. *See Gajdos*, 462 N.E.2d at 1023. On the contrary, we find the Everroads have been afforded a cogently argued, well presented, and extensive appeal. Though not totally successful, we find their appeal was indeed effective.

We have found the Everroads are not entitled to an acquittal, a new trial, or a sentence reduction to the extent that they are entitled to be released from jail at this time. After considering the *Barker* factors, we conclude the delay in the Everroads' appeal was not so excessive as to trigger a violation of their due process rights.

Even if we were to find a denial of due process, the Everroads still would not be entitled to the relief they seek, a new trial. "Since [the Everroads'] appeal was actually heard, and since [they were] represented by competent counsel on that appeal, any prejudice [they] may have suffered from the delay did not harm [their] ability to get a fair, albeit late, review of [their] conviction." *Simmons*, 898 F.2d at 869. Although the Everroads cite numerous federal *habeas corpus* actions in support of their claim that the proper remedy is a discharge with prejudice, we remind them "the usual disposition of a meritorious habeas petition based on a delayed appeal is to grant an alternative writ that orders the state either to prosecute the appeal within a specified reasonable period of time, or to release the petitioner." *Id.* Because their appeal has been prosecuted, and now decided, the remedy generally required by the federal *habeas corpus* cases has been granted. Thus, Everroads have not shown any error based upon delay in their appeal.

We affirm in part, reverse in part, and remand for resentencing in accordance with this opinion.

ROBERTSON, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

Without comment, I concur as to Issues Three, Five, Six, Seven, Eight, Nine, Twelve, Sixteen and Seventeen. Without comment, I concur in result as to Issues One, Four, Ten, Eleven and Eighteen. As to the other issues, and for reasons set forth, I concur in part, concur in result in part, and dissent in part.

Of significant import, of determinative import in my estimation, are the issues concerning standing to challenge the

searches and, in light of the evidence seized, whether the evidence is sufficient to support the convictions.

Each of the convictions challenged is for possession with intent to deliver. The majority holds on the one hand that both defendants lack standing to challenge the searches because neither of them had a sufficient degree of control over the premises or a reasonable expectation of privacy with respect to the house. On the other hand, the majority justifies the convictions upon the principle that both defendants were in constructive possession as to all five substances seized during the searches. I do not believe that Greg's and Garnet's circumstances are sufficiently similar as to dictate identical results with respect to the standing and constructive possession issues.

First, however, I think it appropriate to consider a threshold matter as to the issuance of the original search warrant concerning an allegedly stolen television set. It is clear that the affidavit of the officer which resulted in the issuance of the warrant wholly failed to comply with the requirements of the statute in effect at the time in question. Acts 1977, Public Law 333 (I.C. 35–1–6–2) required that when, as here, the affidavit was based upon hearsay, "the affidavit shall contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished." Although the affidavit asserted that the source was "allegedly present" at the time of the theft and subsequent sale of the TV "to Greg Everroad", it did nothing more than recite an unsupported conclusion that the unnamed source was credible. The affidavit was inadequate on its face. The warrant should not have issued. *See Stabenow v. State* (1986) 2nd Dist., Ind.App., 495 N.E.2d 197. Furthermore, the testimony given during the hearing upon the Motion to Suppress, casts extreme doubt upon whether there was ever any connection between Greg Everroad and a stolen television set. The testimony certainly reflects that the alleged connection

definitely did not come, if at all, from anyone associated with the theft or a sale.

It may well be that a search warrant, issued upon the basis of conscious misrepresentations, is void. *See Franks v. Delaware* (1978) 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. In *Mason v. State* (1989) Ind., 532 N.E.2d 1169, *cert. denied* 490 U.S. 1049, 109 S.Ct. 1960, 104 L.Ed.2d 428, our Supreme Court succinctly stated: "A false affidavit generally renders a search warrant invalid and the fruits of any search made pursuant to it are generally suppressible." 532 N.E.2d at 1170. In such instance, it may not be necessary that a defendant have "standing" to challenge the warrant, so long as the defendant is able to show that the falsity was essential to the probable cause determination made by the issuing magistrate. In any event, the falsities in an affidavit must be disregarded when considering the adequacy of the affidavit vis a vis the issuance of the warrant.

It must be noted further, that the "good faith" exception of *U.S. v. Leon* (1984) 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 is inapplicable because here the officer who made the defective affidavit was the same officer who served the warrant and conducted the search. But even *Leon* itself recognized that where a Fourth Amendment violation has been "substantial and deliberate" the evidence so obtained should be suppressed. 104 S.Ct. at 3413.

The protections of the United States and Indiana Constitutions do not apply, disappear or become ineffective depending upon the degree of favor or disfavor with which we might view the particular defendants or relative seriousness with which we view the crime involved. The protections are to be afforded all persons including those whom we do not like and who are less than upstanding, law-abiding pillars of the community. The "war on drugs" is of extreme importance to all communities and it must be vigorously waged by law enforcement officers and prosecutors. Members of the judiciary, however, may not enlist as battlefield commanders to the detriment of the duty to fairly and impartially administer

the laws and apply constitutional provisions.

Be that as it may, and even if the standing requirement is present for a challenge to a warrant issued as a result of such impermissible tactics, that requirement does not lead to a validation of all the convictions of these two appellants. The above facts and legal considerations justify very close scrutiny of the standing issue.

The majority disposes of the challenge to the searches upon grounds that both Greg and Garnet Everroad lack standing because each of them had no reasonable expectation of privacy as to the place described in the search warrant and had no degree of control over the premises. The State, in raising the issue of standing, did not assert a lack of standing on the part of Greg. The issue was presented only with respect to Garnet. Accordingly, there was no reason for Greg to respond to the contention, nor did he do so. It is understandable that the State would not challenge Greg's standing because the search warrant was premised upon the allegation that the TV set was in Greg's possession at the described residence location. In addition, the eight officers who entered, four from the front and four from the rear of the house (an awesome display of manpower to merely seek out a television set) to serve the warrant did not attempt to read the warrant to Jean Everroad, the owner of the residence who was in the living room at the time. Rather, Officer Coon, who had the warrant, waited until Greg entered the room and sat down before reading the warrant and seeking Greg's permission to make the search.

For this reason, I fail to discern the merit in holding that both defendants lack standing. The majority avoids the illegality of the search by holding that the defendants and each of them, as a matter of law, had virtually no degree of control or expectation of privacy and such control as existed was "completely defined by, subordinate to, and dependent upon, the will of [their] mother and her right to control the entire premises." (Opinion p. 46).

We cannot have it both ways. We cannot validly state on the one hand that the two defendants lacked sufficient control of the premises to give them standing to challenge the search, while on the other hand justify the convictions upon the rationale that both defendants were in sufficient control of the premises as to be in constructive possession of all five substances found in various locations within the house.

Notwithstanding that the original warrant was perhaps based upon fabrication and appears to have been a pretext for gaining entrance to the Everroad house, I agree that it is not unreasonable, under the evidence, to hold that Garnet lacked expectation of privacy as to the house. I conclude otherwise as to Greg.

If the search were valid as to Greg, I would have absolutely no hesitation in voting to affirm his convictions. His factual connection and relationship to the premises leads to my conclusion that he was sufficiently in control to be guilty of constructive possession of the drugs found at the various locations. *See Fassoth v. State* (1988) Ind., 525 N.E.2d 318. This very custodial connection, however, belies the majority determination that Greg lacked standing to challenge the search.

In stating that the "Everroads did not have exclusive possession of the home in which the contraband was found" (Opinion p. 53), the majority appears to acknowledge that they had some degree of possessory and custodial relationship with the property. Were it otherwise, it would seem that the next link in the chain of elements for conviction could not be forged. The ability and intent to control required for constructive possession could not be established. The majority specifically recognizes the need for more than mere presence to prove constructive possession. "Additional circumstances" must be present in order to establish the "intent and capability to maintain dominion and control". (Opinion p. 53).

Where a possessory interest in the premises is proved, such is not, standing alone, sufficient to show an intent to control drugs located within the premises, if the possessory interest is non-exclusive. *Rumple v. State* (1988) 2nd Dist., Ind.App., 529

N.E.2d 861, *trans. denied; Burgin v. State* (1982) 2nd Dist., Ind.App., 431 N.E.2d 864. This principle is not determinative with respect to Garnet's convictions for possession of marijuana and hashish. Garnet's hasty attempt to close the curtains screening the kitchen from outside view and his presence in the kitchen when the officers entered and found the marijuana and hashish in open view support his convictions as to those substances.

As to Garnet, the evidence is insufficient with respect to the substances covered in the other three convictions. The deficiency is reflected in the following from *Satterfield v. State* (1984) 1st Dist., Ind.App., 468 N.E.2d 571, 574–575, *trans. denied:*

> "Clearly, the word 'possess' encompasses within its meaning the elements of volition, intent and conscious knowledge, and these words are element of the offense here. The authority of *Martin v. State*, *supra*, and other cited cases is applicable. The prosecution made no showing through statements or admissions of the origin of the bombs that Satterfield personally possessed the items, or that he made efforts to hide them. There was not even any showing that the room, or desk, in which the bombs were found was habitually used by Satterfield. In short, there was simply no additional evidentiary link, apart from the nonexclusive possession, to show constructive possession."

It is of no moment that the contraband in *Satterfield* was bombs rather than drugs.

*Martin v. State* (1978) 2d Dist., 175 Ind. App. 503, 372 N.E.2d 1194, relied upon by *Satterfield* was a drug case. In *Martin,* it was noted that:

> "Mere presence in the vicinity or association with one having possession of drugs is not sufficient to sustain a conviction. *See Ledcke v. State* (1973) 260 Ind. 382, 296 N.E.2d 412, 416; *Cannon v. State* (2d Dist.1975) 166 Ind.App. 237, 335 N.E.2d 229, 231–32. Some additional, independent proof is necessary to pronounce as reasonable an inference that Linda Martin individually, or together with others, knowingly possessed the contraband." 372 N.E.2d at 1178.

The evidence was found sufficient for the conviction of Linda Martin but was inadequate to convict the other co-defendant, James Martin. In that regard the court said:

> "This evidence merely shows that he had joint authority to control the room where concealed drugs were discovered and, without more, is not enough to sustain a conviction of knowing possession.[7]

---

[7]. Joint occupancy of the room in which concealed drugs are found is not enough to sustain a conviction in those jurisdictions which adhere to the rule that knowing possession cannot be inferred from mere evidence of *nonexclusive* control of the premises. *E.g., Smith v. State* (1973) Fla., 279 So.2d 27; *State v. Bowers* (1974) 87 N.M. 74, 529 P.2d 300; *Mulligan v. State* (1973) Wyo., 513 P.2d 180; *People v. Davenport* (1972) 39 Mich.App. 252, 197 N.W.2d 521; *Feltes et al. v. People* (1972) 178 Colo. 409, 498 P.2d 1128; *Petty v. People* (1968) 167 Colo. 240, 447 P.2d 217." 372 N.E.2d at 1199.

At the time Greg and Garnet were arrested only the marijuana and hashish had been discovered. No other contraband was discovered until after the officers had returned to Columbus and acquired a second search warrant and then returned to the house for a drug search.

The conviction affirmance in *Riding v. State* (1988) 2d Dist., Ind.App., 527 N.E.2d 185, dramatizes the inadequacy of the evidence to support Garnet's convictions upon Counts One, Two and Three. In *Riding* the possession was premised upon the fact that the room in which the substance was found was locked, that defendant had the only key and that his personal papers and effects were found on the dresser in the room. The evidence recited by the majority with respect to Garnet's lack of standing (Op. at 45–46) reflects a total lack of connection with the premises except for his mere presence in the house at the time. The evidence is wholly inadequate to prove that Garnet had the intent or the capability to control the cocaine, LSD, and methaqualone which were the subject of Counts One, Two and Three.

I would concur in the holding of the majority to the effect that Garnet lacked standing to challenge the search. I would also concur that notwithstanding his lack of control or expectation of privacy as to the premises, Garnet was in constructive possession of the marijuana and hashish which was in the kitchen at the time he was also present in the kitchen. I would therefore affirm Garnet's conviction as to either Count Four or Count Five (see majority opinion as to Issue Fourteen) but would reverse as to Counts One, Two and Three.

In summation with respect to the challenges to the search, I would hold that the initial search and all evidence seized as a result of that or subsequent searches should have been suppressed as to Greg Everroad. For this reason, I would reverse all five of his convictions.

As to Garnet Everroad, I agree that he lacks standing to contest the search and that his convictions for constructive possession of marijuana and hashish were sustained by the evidence. The evidence was not sufficient to support a conclusion that he was in constructive possession of the substances not found in open view in the kitchen.

As to Issue Fourteen concerning sentencing upon all five counts, and for reasons heretofore stated, I dissent to the extent that the majority sanctions any convictions as to Greg, and I dissent to the extent that the majority affirms any conviction of Garnet except as to Count Four or Five.

Issue Fifteen deals with consecutive sentencing. Because I would reverse all five of Greg's convictions and would permit sentencing of Garnet only upon Count Four or Five, the matter of consecutive sentences is not, in my estimation an issue.